# JDGE BUCHWALD

Peter D. Raymond
Wallace B. Neel
REED SMITH LLP
599 Lexington Ave.
New York, New York 10022
(212) 521-5400

*Attorneys for Plaintiff Curtis James Jackson, III,
p/k/a/ "50 Cent"*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x

CURTIS JAMES JACKSON, III,
P/K/A "50 CENT,"

           Plaintiff,

    vs.

TACO BELL CORP.,

          Defendant.

----------------------------------------------------------x



'08 CIV 6545

**COMPLAINT**

      Plaintiff Curtis James Jackson, III, p/k/a "50 Cent" ("Plaintiff" or "Jackson," or "50

Cent"), by his attorneys Reed Smith LLP, for his Complaint against defendant Taco Bell Corp.

("Defendant" or "Taco Bell"), alleges as follows:

## NATURE OF ACTION

    1.    Plaintiff Jackson, an enormously popular and successful hip-hop music artist and

owner of the federally-registered 50 CENT trademarks (as defined below), brings this action to

obtain injunctive relief and recover monetary damages for trademark infringement, unfair

competition and violation of his rights of privacy and publicity as a result of Taco Bell's

unauthorized use of plaintiff's name and federally-registered trademarks in its recent hip-hop

themed advertising campaign.

2.      Without seeking or obtaining Jackson's authorization, Defendant Taco Bell made him the star and focus of its nation-wide advertising campaign by using his name, persona, and trademarks to promote Taco Bell's business and products.

3.      Taco Bell drafted a faux "letter" (actually, an advertisement) purportedly addressed to Jackson, which asked him to change his name for one day from "50 Cent" to "79 Cent," "89 Cent," or "99 Cent" in order to publicize Taco Bell's so-called "79-89-99 Cent Why Pay More Value Menu," which offers various tacos and other products for those prices.

4.      In fact, after Taco Bell drafted that "letter," it did not send it to Jackson. Instead, Taco Bell released it to the national press. Given Jackson's enormous popularity, the press ran with the story, thus generating millions of dollars in free publicity for the "79-89-99 Cent Why Pay More Ad Campaign"—which, of course, was the whole idea. After the media had spread the story throughout the United States, Taco Bell finally got around to sending the "letter" to Jackson.

5.      The "letter" was nothing more than a print ad highlighting Jackson's name, persona, and trademarks to promote Taco Bell's new hip-hop-based ad campaign. For example, Taco Bell's website offered a "Rap Name Creator," which permitted users to enter their name, gender, and other characteristics and see what their "Rap Name" would be. The website also offered a "Why Pay Mo' Rhyme Generator," which played hip-hop music and displayed a montage of hip-hop-themed scenes.

6.      Thus, without authorization, Taco Bell traded on the name of the world's biggest hip-hop star to draw attention to its new, hip-hop based advertising campaign, and thereby generated massive publicity for its business. In "guerilla advertising" fashion, Taco Bell stole

(rather than paid for) the endorsement of mega-celebrity Jackson, and then disseminated it for free through the press (rather than paying for advertising time). However, Taco Bell violated federal and state law when it traded on Jackson's name, persona, and federally-registered trademarks without any authorization.

7.    As Taco Bell intended, many consumers believed that 50 Cent had agreed to endorse Taco Bell's products. Indeed, postings on numerous Internet "blogs" castigated 50 Cent for "selling out" by his apparent endorsement of Taco Bell.

8.    Simply put, Taco Bell knew that it would likely have had to pay Jackson a multi-million dollar fee to get his endorsement, even if he had agreed to do it (which is in doubt). Rather than face rejection or pay fair value, Taco Bell chose to steal his endorsement and to enjoy all the publicity of being associated with a mega-star while bearing none of the costs. Jackson brings this action to force Taco Bell to pay for diluting the value of his good name and to recover the fair value of his stolen endorsement.

## JURISDICTION AND VENUE

9.    Jurisdiction is proper in this Court pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, 1338(a) and 1367, because the action involves claims arising under the Lanham Act and trademark laws of the United States and related state claims for trademark infringement and unfair competition, as well as for unauthorized use of plaintiff's name and likeness, and because the amount in controversy exceeds $75,000 (exclusive of interest and costs) and is between citizens of different states.

10.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions which give rise to the claims herein occurred in this

District and because Defendant is subject to personal jurisdiction in this District based upon its

highly-interactive Internet website and its substantial business contacts in this District.

## PARTIES

11.    Plaintiff Curtis James Jackson, III, p/k/a 50 Cent, is a citizen and resident of the

State of Connecticut and has his business offices in New York, New York.

12.    Defendant Taco Bell Corp. is a Delaware corporation with its principal place of

business in Beverly Hills, California. Taco Bell Corp. does business in this District through its

day-to-day operations and through its highly-interactive website.

## FACTUAL BACKGROUND

### Jackson's Creation, Use and Promotion of His Valuable
### Professional Persona and 50 CENT Trademarks

13.    50 Cent is a hip-hop artist known for his good looks, hard-knocks success story,

and immense musical talent, released his chart-topping debut album, *Get Rich or Die Tryin'*, in

February 2003. The debut album went platinum many times over, and a superstar was born. All

told, Jackson's three albums released to-date have all sold more than 25 million copies. He is,

simply put, one of the most recognized and admired musical artists in the world.

14.    Jackson has leveraged his musical success into a successful record label (G-Unit

Records), a clothing line (G-Unit Clothing Company), and several other lucrative ventures, and

has built and guided the "50 Cent" brand to among the most recognized and valuable in the

entertainment world.

15.    Jackson has also donated over one million dollars through his charitable

foundation, The G-Unity Foundation, Inc., which provides grants to nonprofit organizations that

focus on improving the quality of life for low-income and underserved communities.

16.    Jackson is the owner of common law rights and federal registrations in a number of federally registered trademarks and service marks comprising the term 50 CENT, including:

| Mark | Registration / Application No. | Services | Registration/ Application Date |
|------|-------------------------------|----------|-------------------------------|
| 50 CENT | 2,807,302 | Electrical apparatus, namely, pre-recorded phonograph records, compact discs, audio and video cassettes, and DVDs featuring music.<br><br>Clothing, namely, hats, T-shirts, jackets, shirts, sweatshirts and sweatpants, and jerseys.<br><br>Entertainment services in the nature of live performances by a musical artist. | January 20, 2004 |
| 50 CENT & Design | 3,015,725 | Sound and video recordings featuring music. | November 15, 2005 |
| 50 CENT & Design | 3,015,726 | Printed matter namely posters, calendars, photographs, pressure sensitive stickers. | November 15, 2005 |
| 50 CENT & Design | 3,015,727 | Clothing, namely, jerseys, t-shirts, tank tops, sweatshirts, sweatpants, jackets; headgear, namely, hats, visors, knit caps, headbands, bandanas, beanie caps; footwear. | November 15, 2005 |
| 50 CENT & Design | 3,102,330 | Entertainment, namely, live | June 6, 2006 |

| Mark | Registration / Application No. | Services | Registration/ Application Date |
|------|---------|----------|----------------------|
| | | performances by a musical artist. | |
| 50 CENT & Design | 77/505,822 | Jewelry; wristwatches; pocket watches; rings; bracelets; necklaces and medallions. | Filed on June 23, 2008 |
| 50 CENT & Design | 77/505,829 | Bags, namely, sports and travel bags; backpacks; wallets; umbrellas. | Filed on June 23, 2008 |
| 50 CENT & Design | 78/317,151 | Bags, namely, sports and travel bags, backpacks, wallets, umbrellas. Jewelry; wristwatches; pocket watches; rings; bracelets; necklaces and medallions. | Filed on October 22, 2003 |
| 50 CENT & Design | 78/690,678 | Series of books, namely, non-fiction books in the field of urban street themes. | Filed on August 11, 2005 |

The registrations are valid and subsisting, unrevoked, and uncancelled. Copies of Certificates of Registration for the registered marks and United States Patent and Trademark Office records relating to the pending applications listed above are annexed hereto as Exhibit A. These nine marks are collectively referred to herein as the "50 CENT Marks."

17.     As a result of Jackson's long and continuous use, the 50 CENT Marks have individually and collectively come to identify Jackson's goods and services and distinguish them

from those of others, and have come to represent and symbolize substantial goodwill belonging
exclusively to Jackson.

18.    Over the many years that Jackson has used the 50 CENT Marks, Jackson has
expended substantial sums in advertising and promoting his services under the 50 CENT Marks.
Such advertising has included Internet, television, radio, print advertising and live appearances.
As a result of his substantial promotional investments, Jackson has developed an enormously
valuable interest in his name, likeness, persona and the 50 CENT Marks through substantial
investment of time, effort and money.

19.    Plaintiff is commonly known and referred to professionally not only as "50 Cent"
but also more informally as "50" or "Fiddy."

20.    As a result of his popularity and renown, Jackson has established a first-class
brand with the critical Generation X and Generation Y demographics, for which advertisers are
willing to pay substantial premiums. Jackson regularly receives financially lucrative offers to
license use of his name, likeness and trademarks to promote a wide variety of products.
However, Jackson has assiduously protected the 50 Cent "brand." To prevent any diminution of
the public's perception of him, Jackson has limited his endorsement activities to products of the
highest quality and has demanded that any endorsement deals permit him to maintain strict
control over the manner in which his name, likeness and trademarks are used.

21.    As a result, when Jackson does agree to endorse a product or service, his
endorsement commands the attention of the marketplace, particularly among the all-important
teen and young adult demographic. Accordingly, Jackson is highly-compensated when he does
choose to endorse a product.

22.     Jackson has turned away millions of dollars in endorsement offers that he deemed unworthy of his name.  He is extremely cognizant of the public's perception of him and the 50 Cent "brand," and has often forgone endorsement deals which he felt might compromise the integrity of his brand.

**Defendant's Unauthorized Use of Jackson's Name, Persona and Trademarks**

23.     On June 16, 2008, Defendant Taco Bell used Jackson's professional name, likeness and trade name without authorization to sell its own products through its "79-89-99 Why Pay More Value Menu" (the "79-89-99 Cent Ad Campaign").

24.     On that date, Defendant released to the press a purported "letter" to Jackson which was, in reality, nothing more than a transparent commercial advertisement for Taco Bell's 79-89-99 Cent Ad Campaign.

25.     The "letter"—which had never been sent to Jackson prior to its wide distribution to the press—was purportedly addressed to Jackson and repeatedly linked Jackson's image, persona, and registered trademarks to Taco Bell's 79-89-99 Cent Ad Campaign.   A copy of the "letter" is annexed hereto as Exhibit B.

26.     The letter's content confirms that it was purely a commercial advertisement. Indeed, it reads like a poorly-written voice-over for one of Taco Bell's television commercials:

> Dear Mr. Jackson,
>
> We know that you adopted the name 50 Cent years ago as a metaphor for change.  We at Taco Bell are also huge advocates for change.  In fact, for just a few spare coins, we're giving customers more variety for less money with our new 79-89-99 Why Pay more value menu.  Where else can you get a Cheesy Double Beef Burrito for only $.89?
>
> So here's our offer of change to you: For one day this summer, change your name to either 79 Cent, 89 Cent or 99 Cent by showing up to one of our more than 5,600

locations nationwide and rapping your order in the drive thru with your new moniker.

We'll serve the guests of the chosen location with plenty of free Why Pay More menu items. And we'll reward more than just customers—we'll also make a $10,000 contribution to a charity of your choice that they can take "Straight to the Bank."

Inspiration for your rap can be found at www.tacobell.com/valuemenu with our "Why Pay Mo' Rhyme Generator." Just upload your picture and watch change happen. We encourage you to "Think Outside the Bun" and hope you accept our offer.

Sincerely,

/s/
Greg Creed
President
Taco Bell Corp.

27. Thus, without ever sending Jackson this "letter," Taco Bell disseminated advertising throughout the world which employed Jackson's name, persona, and registered trademarks to trumpet its own 79-89-99 Cent Ad Campaign, its website, and its "Think Outside the Bun" slogan.

28. The "letter" and its wide release to the media were clearly intended to generate maximum exposure for Taco Bell's 79-89-99 Cent Ad Campaign, and to falsely imply to consumers that Jackson is affiliated with or has endorsed or approved Taco Bell's low-end, fast-food restaurant business. Moreover, as Defendant undoubtedly hoped and planned, the letter was reported on by hundreds of websites, blogs and other outlets beyond those media outlets that received the initial release.

29. The mere mention of Jackson's name and 50 Cent persona resulted in the press having a field day with the "letter." Defendant sat back and let the media whirlwind swirl for a

few days and then, on or about June 18, 2008, finally dispatched the "letter" to Jackson himself. Obviously, at that point it no longer mattered whether Jackson responded to the faux "offer": Taco Bell had achieved the result it wanted all along: It generated maximum free publicity by associating the 79-89-99 Cent Ad Campaign with Jackson's name and trademarks, without paying Jackson a dime.

30.    The dissemination of the Press Release as part of the 79-89-99 Cent Ad Campaign has caused, and will continue to cause, significant harm to Jackson.

31.    Defendant's actions have also caused confusion in the marketplace among consumers and potential endorsement partners of Jackson, all of whom are likely to believe that the 79-89-99 Cent Ad Campaign and Taco Bell are endorsed and sponsored by Jackson.

32.    There has already been rampant consumer confusion, including communications on Internet blogs and elsewhere in which consumers have criticized Jackson for "selling out" by endorsing Taco Bell.

33.    Defendant has also caused damage to Jackson's valuable reputation as a hip-hop superstar by associating him with the pedestrian rap lyrics and hip-hop themed games contained on the www.tacobell.com website, thus diluting the commercial value of Mr. Jackson's name and trademarks.

34.    Taco Bell's actions have also jeopardized Jackson's future ability to profit from endorsing products he consents to endorse. Defendant's publicity stunt not only "stole" a multi-million dollar endorsement, but it also cheapened Jackson's brand, thus making his endorsement worth less to potential merchandising partners.

## FIRST CLAIM
### (Lanham Act Trademark Infringement, 15 U.S.C. § 1114)

35.    Plaintiff hereby repeats and realleges paragraphs 1 through 34 of this Complaint as if fully set forth herein.

36.    Plaintiff is the owner of federal trademark registrations for five (5) of the 50 CENT Marks (the "Registered 50 CENT Marks").

37.    By his registration and extensive use and promotion of the Registered 50 CENT Marks, Jackson has established a strong association in the public mind between the 50 CENT Marks and the goods and services offered by Plaintiff.

38.    Without Plaintiff's authorization or consent, Defendant has used the Registered 50 CENT Marks and/or marks that are confusingly similar to the Registered 50 CENT Marks to endorse and promote Defendant's own goods and services.

39.    Defendant's acts of offering for sale goods and services using the Registered 50 CENT Marks have, upon information and belief, caused actual confusion, mistake and deception among relevant consumers as to endorsement and sponsorship of Defendant's goods and services and have deceived the relevant public into believing that Defendant's goods and services are associated with or are otherwise endorsed, sponsored or authorized by Plaintiff, all to the damage and detriment of Plaintiff's reputation, goodwill and sales.

40.    Defendant's unlawful acts constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

41.    Defendant's acts have been willful, deliberate and intended to benefit Defendant at Plaintiff's expense.

42.    Plaintiff has suffered monetary damages as a result of defendant's unlawful acts in an amount to be determined at trial.

43.     However, Plaintiff has no adequate remedy at law to compensate him fully for the damages that have been caused by defendant's unlawful acts and which would be caused by any further infringement of Plaintiff's Registered 50 CENT Marks by Defendant, unless future unlawful acts and infringements of this kind are enjoined by this Court.

44.     This is an exceptional case under 15 U.S.C. § 1117.

### SECOND CLAIM
**(Lanham Act False Designation of Sponsorship, 15 U.S.C. § 1125(a))**

45.     Plaintiff hereby repeats and realleges paragraphs 1 through 44 of this Complaint as if fully set forth herein.

46.     In connection with the advertising and promotion of its 79-89-99 Cent Ad Campaign, Defendant has made false or misleading descriptions of fact, or false or misleading representations of fact, which are have caused, and are causing confusion, causing mistake, and are deceiving as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the sponsorship or approval of Defendant's goods, services, or commercial activities by Plaintiff.

47.     Defendant's statements are material, are either literally false or, while not literally false, are implicitly false and are likely to mislead confuse, or deceive consumers and were made in order to entice consumers to purchase Defendants' products.

48.     Defendant's false or misleading descriptions of fact and false or misleading representations of fact are likely to damage Plaintiff by making representations of fact likely to cause confusion, mistake, and deception as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the sponsorship or approval of Defendant's goods, services, or commercial activities by Plaintiff.

49.    By reason of the foregoing, Defendant has violated and is continuing to violate Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

50.    Upon information and belief, Defendant's conduct is willful and deliberate and done with the intent to unfairly commercially benefit from its false statements at Jackson's expense.

51.    Defendant's conduct is causing immediate and irreparable injury to Plaintiff and to the goodwill and reputation of the 50 CENT Marks, and will continue both to damage Plaintiff and deceive the public unless enjoined by the Court.

52.    Plaintiff has no adequate remedy at law.

53.    This is an exceptional case under 15 U.S.C. § 1117.

## THIRD CLAIM
### (Lanham Act Trademark Dilution, 15 U.S.C. § 1125(c))

54.    Plaintiff hereby repeats and realleges paragraphs 1 through 53 of this Complaint as if fully set forth herein.

55.    The 50 CENT Marks are distinctive and extraordinarily famous and well-known throughout the United States. By reason of Plaintiff's extensive advertising and use, the 50 CENT Marks have become highly distinctive of Plaintiff and are uniquely associated with Plaintiff.

56.    Defendant's unauthorized use of the 50 CENT Marks commenced after the 50 CENT Marks were federally registered and had become famous and distinctive.

57.     Defendant's unauthorized use of the 50 CENT Marks is likely to dilute, does dilute, and will continue to dilute the distinctive quality of the 50 CENT Marks by lessening their capacity to identify and distinguish Plaintiff exclusively as the source of goods and services bearing or provided under the 50 CENT Marks, and is likely to tarnish, does tarnish, and will continue to tarnish the 50 CENT Marks by associating them with products and services of inferior quality, in violation of 15 U.S.C. § 1125(c).

58.     Defendant's intentional use of marks that incorporate or are nearly identical to the 50 CENT Marks for its own commercial business purposes is intended to and has the effect of trading on Plaintiff's reputation and causing dilution of the 50 CENT Marks.

59.     Upon information and belief, Defendant's conduct is willful and deliberate and done with the intent to unfairly commercially benefit its use of the 50 CENT Marks.

60.     Defendant's conduct is causing immediate and irreparable injury to Plaintiff and the 50 CENT Marks, and will continue to damage Plaintiff unless enjoined by this Court.

61.     Plaintiff has no adequate remedy at law.

62.     This is an exceptional case under 15 U.S.C. § 1117.

## FOURTH CLAIM
### (New York Civil Rights Law, Section 51)

63.     Plaintiff hereby repeats and realleges paragraphs 1 through 62 of this Complaint as if fully set forth herein.

64.     Defendant has used Plaintiff's name within the state of New York for advertising purposes or for the purpose of trade.

65.    Defendant's use of Plaintiff's name has been without the written or oral authorization of Plaintiff or anyone authorized by him to give such authorization.

66.    Defendant's use of Plaintiff's name constitutes a violation of Section 51 of the Civil Rights Law of the State of New York.

67.    Defendant's use of Plaintiff's name has caused injury to Plaintiff in an amount to be proven at trial.

68.    Additionally, Defendant's use of Plaintiff's name in the manner described herein is forbidden and/or unlawful pursuant to Section 50 of New York Civil Rights Law.

69.    Defendant has knowingly used Plaintiff's name in a manner that it knew to be forbidden and/or unlawful pursuant to Section 50 of New York Civil Rights Law.

70.    Plaintiff therefore demands exemplary damages under Section 51 of New York Civil Rights Law.

71.    Furthermore, Section 51 of the New York Civil Rights Law provides a right to injunctive relief to restrain the unauthorized use of a person's name for purposes of advertising or trade purposes within New York State.

72.    Absent injunctive relief enjoining the continued use of his name in its advertising campaigns, Plaintiff will be irreparably damaged in a manner and to an extent not compensable in money damages.

73.    Plaintiff has no adequate remedy at law against the continued use of his name in Defendant's advertising campaigns.

74.     Plaintiff therefore demands that Defendant be enjoined and restrained pursuant to Section 51 of the Civil Rights Law of the State of New York from using Plaintiff's name for advertising purposes or purposes of trade.

## FIFTH CLAIM
### (New York General Business Laws § 360-*l*)

75.     Plaintiff hereby repeats and realleges paragraphs 1 through 74 of this Complaint as if fully set forth herein.

76.     The 50 CENT Marks are distinctive and extraordinarily famous and well-known throughout the United States.  By reason of Plaintiff's extensive advertising and use, the 50 CENT Marks have become highly distinctive of Plaintiff and are uniquely associated with Plaintiff, including by consumers in the State of New York.

77.     Defendant's unauthorized use of the 50 CENT Marks commenced after the 50 CENT Marks were federally registered and had become famous and distinctive in the State of New York.

78.     Defendant's unauthorized use of the 50 CENT Marks is likely to dilute, does dilute, and will continue to dilute the distinctive quality of the 50 CENT Marks by lessening their capacity to identify and distinguish Plaintiff exclusively as the source of goods and services bearing or provided under the 50 CENT Marks, and is likely to tarnish, does tarnish, and will continue to tarnish the 50 CENT Marks by associating them with products and services of inferior quality, in violation of New York General Business law § 360-*l*.

79.     Defendant's intentional use of marks that incorporate or are nearly identical to the 50 CENT Marks for its own commercial business purposes is intended to and has the effect of trading on Plaintiff's reputation and causing dilution of the 50 CENT Marks.

80.     Defendant's conduct is causing immediate and irreparable injury to Plaintiff and the 50 CENT Marks, and will continue to damage Plaintiff unless enjoined by this Court.

81.     Plaintiff has no adequate remedy at law.

### SIXTH CLAIM
### (Unjust Enrichment)

82.     Plaintiff hereby repeats and realleges paragraphs 1 through 81 of this Complaint as if fully set forth herein.

83.     Defendant has benefited from its unlawful use of Plaintiff's name because Defendant has derived substantial revenue from the continued use of Plaintiff's his name in Defendant's advertising campaigns.

84.     It would be against equity and good conscience to allow Defendant to retain the substantial revenues and profits it has realized through its blatantly unlawful use of Plaintiff's name.

85.     Defendant has been unjustly enriched by its unlawful use of said name.

86.     Plaintiff lacks an adequate remedy at law.

-17-

## JURY DEMAND

87.     Plaintiff demands a trial by jury on all claims set forth herein.

**WHEREFORE,** Plaintiff demands that judgment thereon be rendered:

1.  On the First, Second, Third, Fourth, and Fifth Claims, preliminarily and permanently enjoining Defendant, and any of its officers, directors, shareholders, agents, servants, employees, successors, assigns, parents, subsidiaries and affiliates, and all other acting in concert, participation or privity with it, from any use of plaintiff's name, likeness or trademarks;

2.  On the First, Second, Third, Fourth, Fifth, and Sixth Claims, awarding Plaintiff damages in an amount to be determined at trial, which is presently believed to exceed $1,000,000.00;

3.  On the First, Second, and Third Claims, awarding Plaintiff all of Defendant's profits from its trademark infringement and unfair competition;

4.  On the First, Second, and Third Claims, trebling Jackson's recovery, pursuant to Lanham Act § 35 (15 U.S.C. § 1117), as a result of willful and intentional violations by Defendant;

5.  On the Fourth Claim, awarding Plaintiff exemplary damages pursuant to New York Civil Rights Law § 51;

6.  Awarding Plaintiff his reasonable attorneys' fees as well as his costs and disbursements incurred in prosecuting this action, pursuant to Lanham Act § 35 (15 U.S.C. § 1117) and/or New York Civil Rights Law § 51; and

7. Awarding Plaintiff such other relief as this Court deems just, proper, and equitable.

Dated: New York, New York
      July 23, 2008

                          REED SMITH LLP

By: _____
        Peter D. Raymond
        Wallace B. Neel
    599 Lexington Ave.
    New York, New York 10022
    (212) 521-5400

    *Attorneys for Plaintiff Curtis James Jackson,*
    *p/k/a "50 Cent"*

**EXHIBIT A**

Int. Cls.: 9, 25, and 41

Prior U.S. Cls.: 21, 22, 23, 26, 36, 38, 39, 100, 101, and 107

Reg. No. 2,807,302

# United States Patent and Trademark Office

Registered Jan. 20, 2004

## TRADEMARK
## SERVICE MARK
### PRINCIPAL REGISTER

## 50 CENT

JACKSON, CURTIS (UNITED STATES INDIVI-
DUAL)
C/O CUTLER & SEDLMAYR, LLP
200 PARK AVENUE SOUTH, STE. 1408
NEW YORK, NY 10003

FOR: ELECTRICAL APPARATUS, NAMELY,
PRE-RECORDED PHONOGRAPH RECORDS, COM-
PACT DISCS, AUDIO AND VIDEO CASSETTES,
AND DVDS FEATURING MUSIC, IN CLASS 9 (U.S.
CLS. 21, 23, 26, 36 AND 38).

FIRST USE 10-19-1999; IN COMMERCE 10-19-1999.

FOR: CLOTHING, NAMELY, HATS, T-SHIRTS,
JACKETS, SHIRTS, SWEATSHIRTS AND SWEAT
PANTS, AND JERSEYS, IN CLASS 25 (U.S. CLS. 22
AND 39).

FIRST USE 2-1-2003; IN COMMERCE 2-1-2003.

FOR: ENTERTAINMENT SERVICES IN THE
NATURE OF LIVE PERFORMANCES BY A MUSI-
CAL ARTIST, IN CLASS 41 (U.S. CLS. 100, 101 AND
107).

FIRST USE 10-13-2002; IN COMMERCE 10-13-2002.

SN 76-429,651, FILED 7-9-2002.

KEVON CHISOLM, EXAMINING ATTORNEY

Int. Cl.: 9

Prior U.S. Cls.: 21, 23, 26, 36 and 38

**United States Patent and Trademark Office**

Reg. No. 3,015,725

Registered Nov. 15, 2005

## TRADEMARK
### PRINCIPAL REGISTER



JACKSON, CURTIS (UNITED STATES INDIVI-
DUAL)
C/O SEDLMAYR & ASSOCIATES, P.C.
NEW YORK, NY 10003

FOR: SOUND AND VIDEO RECORDINGS FEA-
TURING MUSIC, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36
AND 38).

FIRST USE 10-19-1999; IN COMMERCE 10-19-1999.

OWNER OF U.S. REG. NO. 2,807,302.

50 CENT IS THE PROFESSIONAL NAME OF A
LIVING INDIVIDUAL WHOSE CONSENT IS OF
RECORD.

SER. NO. 78-976,228, FILED 10-22-2003.

EVELYN BRADLEY, EXAMINING ATTORNEY

Int. Cl.: 16

Prior U.S. Cls.: 2, 5, 22, 23, 29, 37, 38 and 50

**United States Patent and Trademark Office**

Reg. No. 3,015,726

Registered Nov. 15, 2005

## TRADEMARK
### PRINCIPAL REGISTER



JACKSON, CURTIS (UNITED STATES INDIVI-
DUAL)
C/O SEDLMAYR & ASSOCIATES, P.C.
NEW YORK, NY 10003

FOR: PRINTED MATTER NAMELY POSTERS;
CALENDARS; PHOTOGRAPHS; PRESSURE SENSI-
TIVE STICKERS, IN CLASS 16 (U.S. CLS. 2, 5, 22, 23,
29, 37, 38 AND 50).

FIRST USE 10-29-2002; IN COMMERCE 10-29-2002.

OWNER OF U.S. REG. NO. 2,807,302.

50 CENT IS THE PROFESSIONAL NAME OF A
LIVING INDIVIDUAL WHOSE CONSENT IS OF
RECORD.

SER. NO. 78-976,229, FILED 10-22-2003.

EVELYN BRADLEY, EXAMINING ATTORNEY

**Int. Cl.: 25**

**Prior U.S. Cls.: 22 and 39**

Reg. No. 3,015,727

## United States Patent and Trademark Office

Registered Nov. 15, 2005

### TRADEMARK
#### PRINCIPAL REGISTER



JACKSON, CURTIS (UNITED STATES INDIVI-
DUAL)
C/O SEDLMAYR & ASSOCIATES, P.C.
NEW YORK, NY 10003

FOR: CLOTHING, NAMELY, JERSEYS, T-
SHIRTS, TANK TOPS, SHIRTS, SWEATSHIRTS,
SWEATPANTS, JACKETS; HEADGEAR, NAMELY,
HATS, VISORS, KNIT CAPS, HEADBANDS, BAN-
DANAS, BEANIE CAPS; FOOTWEAR, IN CLASS 25
(U.S. CLS. 22 AND 39).

FIRST USE 2-1-2003; IN COMMERCE 2-1-2003.

OWNER OF U.S. REG. NO. 2,807,302.

50 CENT IS THE PROFESSIONAL NAME OF A
LIVING INDIVIDUAL WHOSE CONSENT IS OF
RECORD.

SER. NO. 78-976,230, FILED 10-22-2003.

EVELYN BRADLEY, EXAMINING ATTORNEY

Int. Cl.: 41

Prior U.S. Cls.: 100, 101, and 107

**United States Patent and Trademark Office**

Reg. No. 3,102,330

Registered June 6, 2006

## SERVICE MARK
### PRINCIPAL REGISTER



JACKSON, CURTIS (UNITED STATES INDIVI-
 DUAL)
C/O SEDLMAYR & ASSOCIATES, P.C.
NEW YORK, NY 10003

 FOR: ENTERTAINMENT, NAMELY, LIVE PER-
FORMANCES BY A MUSICAL ARTIST, IN CLASS 41
(U.S. CLS. 100, 101 AND 107).

 FIRST USE 10-13-2002; IN COMMERCE 10-13-2002.

OWNER OF U.S. REG. NO. 2,807,302.

 50 CENT IS THE PROFESSIONAL NAME OF A
LIVING INDIVIDUAL WHOSE CONSENT IS OF
RECORD.

 SN 78-976,688, FILED 10-22-2003.

EVELYN BRADLEY, EXAMINING ATTORNEY



**United States Patent and Trademark Office**

Home Site Index Search FAQ Glossary Guides Contacts eBusiness eBiz alerts News Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sat Jul 19 04:15:04 EDT 2008*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST |

| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

**Logout**  Please logout when you are done to release system resources allocated for you.

**Start**  List At: [        ]  OR  **Jump**  to record: [        ]  **Record 11 out of 19**

| TARR Status | ASSIGN Status | TDR | TTAB Status |  *( Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| **Word Mark** | **50 CENT** |
| **Goods and Services** | IC 014. US 002 027 028 050. G & S: Jewelry; wristwatches; pocket watches; rings; bracelets; necklaces and medallions |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Search Code** | 26.09.02 - Plain single line squares; Squares, plain single line |
| **Serial Number** | 77505822 |
| **Filing Date** | June 23, 2008 |
| **Current Filing Basis** | 1B |
| **Original Filing Basis** | 1B |
| **Owner** | (APPLICANT) Jackson, Curtis INDIVIDUAL UNITED STATES c/o Sedlmayr & Associates, P.C. 200 Park Avenue South, Suite 1408 New York NEW YORK 10003 |
| **Attorney of Record** | Jody H Drake |
| **Prior Registrations** | 3015726;3015727;3102330;AND OTHERS |
| **Description of Mark** | Color is not claimed as a feature of the mark. The mark consists of the numbers "50" in a large font over the word "CENT" in a black outlined square. |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |



**United States Patent and Trademark Office**

Home  Site Index  Search  FAQ  Glossary  Guides  Contacts  eBusiness  eBiz alerts  News  Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sat Jul 19 04:15:04 EDT 2008*

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | **SEARCH OG** | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST

FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

Logout   Please logout when you are done to release system resources allocated for you.

Start   List At: [        ]   OR   Jump   to record: [        ]   **Record 10 out of 19**

TARR Status | ASSIGN Status | TDR | TTAB Status   *( Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| **Word Mark** | **50 CENT** |
| **Goods and Services** | IC 018. US 001 002 003 022 041. G & S: Bags, namely, sports and travel bags; backpacks; wallets; umbrellas |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Search Code** | 26.09.02 - Plain single line squares; Squares, plain single line |
| **Serial Number** | 77505829 |
| **Filing Date** | June 23, 2008 |
| **Current Filing Basis** | 1B |
| **Original Filing Basis** | 1B |
| **Owner** | (APPLICANT) Jackson, Curtis INDIVIDUAL UNITED STATES c/o Sedlmayr & Associates, P.C. 200 Park Avenue South, Suite 1408 New York NEW YORK 10003 |
| **Attorney of Record** | Jody H Drake |
| **Prior Registrations** | 3015726;3015727;3102330;AND OTHERS |
| **Description of Mark** | Color is not claimed as a feature of the mark. The mark consists of the numbers "50" in a large font over the word "CENT" in a black outlined square. |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |



**United States Patent and Trademark Office**

Home  Site Index  Search  FAQ  Glossary  Guides  Contacts  eBusiness  eBiz alerts  News  Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sat Jul 19 04:15:04 EDT 2008*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST |

| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

**Logout**  Please logout when you are done to release system resources allocated for you.

**Start**  List At: [        ] OR **Jump** to record: [        ]  **Record 7 out of 19**

| TARR Status | ASSIGN Status | TDR | TTAB Status |  *( Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| **Word Mark** | **50 CENT** |
| **Goods and Services** | IC 014. US 002 027 028 050. G & S: Jewelry; wristwatches; pocket watches; rings; bracelets; necklaces and medallions |
| | IC 018. US 001 002 003 022 041. G & S: Bags, namely sports and travel bags; backpacks; wallets; umbrellas |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Search Code** | 26.09.02 - Plain single line squares; Squares, plain single line |
| **Serial Number** | 78317151 |
| **Filing Date** | October 22, 2003 |
| **Current Filing Basis** | 1B |
| **Original Filing Basis** | 1A;1B |
| **Published for Opposition** | March 29, 2005 |
| **Owner** | (APPLICANT) Jackson, Curtis INDIVIDUAL UNITED STATES c/o Sedlmayr & Associates, P.C. 200 PARK AVE S STE 1408 New York NEW YORK 10003 |
| **Attorney of Record** | Theodor K. Sedlmayr |
| **Prior Registrations** | 2807302 |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Other Data** | 50 CENT is the professional name of a living individual whose consent is of record. |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST |

| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |



**United States Patent and Trademark Office**

Home  Site Index  Search  FAQ  Glossary  Guides  Contacts  eBusiness  eBiz alerts  News  Help

## Trademarks > Trademark Electronic Search System (TESS)

TESS was last updated on Sat Jul 19 04:15:04 EDT 2008

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST |
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout  Please logout when you are done to release system resources allocated for you.

Start  List At: [        ]  OR  Jump  to record: [        ]  **Record 1 out of 19**

| TARR Status | ASSIGN Status | TDR | TTAB Status |   *( Use the "Back" button of the Internet Browser to return to TESS)*



| Word Mark | 50 CENT |
| Goods and Services | IC 016. US 002 005 022 023 029 037 038 050. G & S: SERIES OF BOOKS, NAMELY, NON-FICTION BOOKS IN THE FIELD OF URBAN STREET THEMES |
| Mark Drawing Code | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| Design Search Code | 26.11.02 - Plain single line rectangles; Rectangles (single line) |
| Serial Number | 78690678 |
| Filing Date | August 11, 2005 |
| Current Filing Basis | 1B |
| Original Filing Basis | 1B |
| Published for Opposition | July 25, 2006 |
| Owner | (APPLICANT) Jackson, Curtis INDIVIDUAL UNITED STATES c/o Sedlmayr & Associates 200 Park Avenue South, Ste. 1408 New York NEW YORK 10003 |
| Attorney of Record | Jody H. Drake |
| Type of Mark | TRADEMARK |
| Register | PRINCIPAL |
| Other Data | 50 CENT identifies a living individual whose consent is of record. |
| Live/Dead Indicator | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST |
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

| HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY

**EXHIBIT B**



**Greg Creed**
President

**Taco Bell Corp.**
17901 Von Karman
Irvine, CA 92614

June 18, 2008

Mr. Curtis Jackson aka 50 Cent
c/o Joanne Wiles
William Morris Agency
One William Morris Place
Beverly Hills, CA 90212

Dear Mr. Jackson,

We know that you adopted the name 50 Cent years ago as a metaphor for change. We at Taco Bell are also huge advocates of change. In fact, for just a few spare coins, we're giving consumers more variety for less money with our new 79-89-99 *Why Pay More* value menu. Where else can you get a Cheesy Double Beef Burrito for only $.89?

So here's our offer of change to you: For one day this summer, change your name to either 79 Cent, 89 Cent or 99 Cent by showing up to one of our more than 5,600 locations nationwide and rapping your order in the drive thru with your new moniker.

We'll serve the guests of the chosen location with plenty of free Why Pay More menu items. And we'll reward more than just customers –we'll also make a $10,000 contribution to a charity of your choice that they can take "Straight to the Bank."

Inspiration for your rap can be found at www.tacobell.com/valuemenu with our "Why Pay Mo' Rhyme Generator." Just upload your picture and watch change happen. We encourage you to "Think Outside the Bun" and hope you accept our offer.

Sincerely,

Greg Creed

President
Taco Bell Corp