# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CURTIS JAMES JACKSON III, P/K/A "50 CENT," : <br><br> Plaintiff, : <br><br> -against- : <br><br> TACO BELL CORP., : <br><br> Defendant. : | No. 08 CV 6545 (NRB/RLE) |

[FILED UNDER SEAL]

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT <u>WITH RESPECT TO DEFENDANT'S LIABILITY</u>

Oral Argument Requested

July 9, 2009

**REED SMITH LLP**
Peter D. Raymond
Wallace Neel
599 Lexington Avenue, 22nd Floor
New York, New York 10022
(212) 521-5400

*Attorneys for Plaintiff*
*Curtis James Jackson p/k/a "50 Cent"*

<u>**TABLE OF CONTENTS**</u>

**Page**

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT ........................................................................................................3

POINT I
Jackson Is Entitled to Summary Judgment That Taco Bell Is
Liable Under Section 51 of New York Civil Rights Law Because
Taco Bell Violated Jackson's Right of Publicity As A Matter Of Law................................4

    1.    The "Letter" Used Jackson's Given Name and Professional Name. ...........5

    2.    The Use of Jackson's Name Occurred in New York State. .........................5

    3.    Taco Bell Did Not Have Jackson's Written
           Consent  to Use His Name in the "Letter".....................................................5

    4.    Taco Bell's So-Called "Letter" Constitutes
           a Use of Jackson's Name For Advertising Purposes. ...................................5

    5.    Taco Bell's Affirmative Defenses Fail As A Matter of Law.......................9

POINT II
Taco Bell Is Liable To Jackson For Its
False Designation of Endorsement Under Section 43(a).....................................15

POINT III
Taco Bell Is Liable for Infringement Under Section 32 of the Lanham Act ....................21

    1.    Taco Bell's Defense of Fair Use Fails as a Matter of Law........................21

POINT IV
Jackson Is Entitled To Summary Judgment that
Taco Bell Is Liable for Monetary Damages Under the Lanham Act.................................23

    1.    Because Taco Bell's Conduct Has Been So
           Outrageous and Intentional, Actual Confusion Should Be Presumed .......23

    2.    Jackson Has Produced Evidence of Actual Confusion
           As To  His Association or Endorsement of Taco Bell................................24

POINT V
Taco Bell's Conduct Is So Egregious That The Court Should
Grant Summary Judgment  That The Case Is "Exceptional" Under 28 U.S.C. § 1117.....24

CONCLUSION.....................................................................................................25

# TABLE OF AUTHORITIES

**Page**

## CASES

Ali v. Playgirl, Inc., 447 F. Supp. 723 (S.D.N.Y. 1978).................................................. 12, 13

Allen v. Men's World Outlet, Inc., 679 F. Supp. 360 (S.D.N.Y. 1988) ........................................... 4

Allen v. Nat'l Home Video, Inc., 610 F. Supp. 612 (S.D.N.Y. 1988)........................ 15, 16, 17, 19

Beverly v. Choices Women's Medical Center, Inc., 78 N.Y.2d 745, 587 N.E.2d 275
(N.Y. 1991) ................................................................................................................... passim

Bolger v. Young Drugs Products Corp., 463 U.S. 60, 103 S. Ct. 2875, 77 L. Ed. 2d 469
(1983).............................................................................................................................. 12

Brinkley v. Casablancas, 80 A.D.2d, 438 N.Y.S.2d 1004 (1st Dep't 1981)................................ 13

Brother Records, Inc. v. Jardine, 318 F.3d 900 (9th Cir. 2004) .................................................. 22

Cadbury Bev., Inc. v. Cott Corp., 73 F.3d 474 (2d Cir. 1996) .................................................... 18

Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986) .................................................. 3

Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd., 604 F.2d 200
(2d Cir. 1979)............................................................................................................... 14, 15

Davis v. High Soc'y Magazine, Inc., 90 A.D.2d 374, 457 N.Y.S.2d 308
(2d Dep't 1982) ...................................................................................................... 9, 10, 14

El Greco Leather Prods. Co. v. Shoe World, Inc., 806 F.2d 392 (2d Cir. 1986).................... 19, 20

EMI Catalogue P'ship. v. Hill, Holliday, Connors, Cosmopulos Inc., 228 F.3d 56
(2d Cir. 2000)............................................................................................................... 21, 22

Finger v. Omni Publ'n Int'l Ltd., 566 N.E.2d 141 (N.Y. 1990) .................................................. 11

Freihofer v. Hearst Corp., 65 N.Y.2d 135, 480 N.E.2d 349 (N.Y. 1985)..................................... 9

Friedan v. Friedan, 414 F. Supp. 77 (S.D.N.Y. 1976) ................................................................ 10

Getty Petrol. Corp. v. Bartco Petrol. Corp., 858 F.2d 103 (2d Cir. 1988)................................... 24

Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137 (2d Cir. 1997) ................................. 20

Gruner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072 (2d Cir. 1993)............................. 21

Gucci Am., Inc. v. Duty Free Apparel, Ltd., 286 F. Supp. 2d 284 (S.D.N.Y. 2003) ................... 21

Hasbro v. Lanard Toys, Ltd., 858 F.2d 70 (2d Cir. 1988).......................................................... 20

Heller v. Family Circle, Inc., 85 A.D.2d 679, 445 N.Y.S.2d 679 (2d Dep't 1981)..................... 11

Henley v. Dillard's Department Stores, 46 F. Supp 2d 587 (N.D. Tex. 1999)............................. 14

Hoepker v. Kruger, 200 F. Supp. 2d 340 (S.D.N.Y. 2002) ....................................................... 5, 9

Koussevitzky v. Allen, Towne & Heath Inc., 188 Misc. 479, 68 N.Y.S.2d 779
(Sup. Ct. N.Y. Co. 1947) ................................................................................................... 6

Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867 (2d Cir. 1986).................... 16

**TABLE OF AUTHORITIES**

**(continued)**

Page

**CASES**

Lyons P'ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789  (4th Cir. 2000) .............................. 18

Morse v. Studin, 283 A.D.2d 622, 725 N.Y.S.2d 93 (2d Dep't 2001) .......................................... 4

Nat'l Baseball Hall of Fame and Museum, Inc. v. All Sports Promotions Group., Inc.,
    No. 99-CIV-3635 (KMW) 2001 WL 196755 (S.D.N.Y. Feb. 20, 2001) ................................ 18

Negri v. Schering Corp., 333 F. Supp. 101 (S.D.N.Y. 1971) .................................................. 4, 6, 7

Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc., 170 F.R.D. 361,
    (S.D.N.Y. 1997) ....................................................................................................................... 20

Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492 (2d Cir. 1960) ................................. passim

PPX Enters. Inc. v. Audiofidelity Enters. Inc., 818 F.2d 266 (2d Cir. 1981) .............................. 23

Reilly v. Rapperswill Corp, 50 A.D.2d 342 (1st Dep't 1975) ...................................................... 10

Rinaldi v. Village Voice, 79 Misc.2d 57, 359 N.Y.S.2d 176 (Sup. Ct N.Y. Co. 1974) ......... 11, 12

Rosemont Enters. v. Urban Sys., Inc., 72 Misc. 2d 788, 340 N.Y.S.2d 144
    (Sup. Ct. N.Y. Co. 1973) ...................................................................................................... 4, 13

Ryan v. Volpone Stamp Co., Inc., 107 F. Supp. 2d 369 (S.D.N.Y. 2000) ................................... 17

Safeway Stores, Inc. v. Safeway Props., Inc., 307 F.2d 495 (2d Cir. 1962)................................. 22

Selsman v. Universal Photo Books, Inc., 18 A.D.2d 151 (1st Dep't 1963)................................. 7, 8

Sidis v. F-R. Pub. Co., 113 F.2d 806 (2d Cir. 1940) ............................................................. 10, 13

Yeshiva University v. New England Educ. Institute, Inc., 631 F. Supp. 146 (S.D.N.Y. 1986) ... 24

**STATUTES & OTHER AUTHORITIES**

15 U.S.C. § 1117 ............................................................................................................................. 3

28 U.S.C. § 1117(a) ...................................................................................................................... 24

Fed.R.Civ.P. 56(c) ......................................................................................................................... 3

Restatement (Third) of Unfair Competition § 36, cmt. i (1995)................................................... 23

Section 43(a)(1)(A) of the Lanham Act................................................................................. passim

Plaintiff Curtis James Jackson III, p/k/a "50 Cent", by his attorneys Reed Smith LLP, respectfully submits the following Memorandum of Law, along with the accompanying Statement of Material Facts pursuant to Local Civil Rule 56.1 ("Statement of Material Facts"), and the Declaration of Peter D. Raymond, Esq. executed on June 25, 2009 and all exhibits annexed thereto (the "Raymond Decl."), in support of his Motion for Partial Summary Judgment With Respect to Liability (the "Motion") against Defendant Taco Bell Corp ("Taco Bell").[1]

The Court is respectfully referred to Plaintiff's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 (the "UF") and the Declaration of Peter D. Raymond executed July 9, 2009, and all exhibits thereto, which are incorporated here by reference in their entirety.

## PRELIMINARY STATEMENT

Jackson seeks partial summary judgment on liability on the First, Second, and Third Causes of Action of the Complaint, which relate to violations of his right of publicity, false designation of sponsorship, and trademark infringement under the Lanham Act and injunctive relief thereunder; and dismissing Defendants' Second, Third, and Fourth Affirmative Defenses which invoke the First Amendment, the "newsworthiness" doctrine, and the doctrine of "fair use."

The undisputed facts elicited during discovery mandate a ruling, as a matter of law, that Taco Bell used Jackson's given name, professional name, and registered trademark, 50 CENT, for advertising purposes and without his permission in connection with an advertisement for its

---

[1]   This document and the accompanying Statement of Material Facts and Raymond Declaration are filed Under Seal pursuant to the Court's January 5, 2009 Protective Order due to the fact that the vast majority of the information, documents, and testimony referenced herein have been designated as either "Highly Confidential" or "Confidential"

newly-created, rap-based advertising and public relations campaign for its 79/89/99 Cent Why Pay More! Value Menu, which was launched in or around early 2008.

For a period of six months in early 2008, Taco Bell (along with its agent, public relations firm Cohn & Wolfe ("C&W")) created a plan to use Jackson's name and registered word mark, 50 CENT, to bolster their public relations campaign to promote the summer launch of Taco Bell's new 79/89/99 Cent Why Pay More! Value Menu.  Specifically, ███████████████ to entertainment media an advertisement in the form of a "letter" addressed (but not delivered) to Jackson containing an "offer" to give $10,000 to Jackson's favorite charity if Jackson would change his professional name to 79 Cent, 89 Cent, or 99 Cent for a day, go to a Taco Bell store, and rap his order into the microphone at the drive-thru window.  The "letter" contained what Taco Bell and C&W witnesses described as ████████████████████████ ████████████████████

Taco Bell and Cohn & Wolfe did not seek to obtain Jackson's permission to use his given name, his professional name, or his 50 CENT word mark in connection with this ad, nor did Jackson ever give such permission.  Taco Bell and C&W did not compensate Jackson in any way for the use of his name in the ad.  Cohn & Wolfe employees did consider ████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████

The "letter" was leaked to the press beginning on June 17, 2008, and, as Taco Bell hoped, it reaped massive publicity for WPM by leveraging the worldwide fame and goodwill that Jackson has built in his name trademarks, and persona to promote Taco Bell's products, all

without Jackson's consent and without any compensation.  Indeed, Jackson received nothing for

the use of his valuable name and mark other than the repercussions of the confusion created

among the public, who thought he had "sold out" by endorsing Taco Bell.

In sum, Taco Bell chose to use Jackson's "50 Cent" name and trademark to advertise its

products, without his consent and without compensating him.  It achieved exactly the public

relations "Buzz" it was seeking.  All that Jackson received was marketplace confusion regarding

whether he had endorsed a fast food chain.

The undisputed facts elicited from Taco Bell and its agent C&W during discovery

compel the conclusion that Taco Bell (i) is liable on the First, Second, and Third causes of

action; and (ii) has no affirmative defenses to these causes of action.  Therefore, Jackson requests

that the Court should grant Jackson partial summary judgment on liability and exceptionality

under 15 U.S.C. § 1117 (thus awarding Jackson his attorneys' fees and costs).  That ruling will

leave only (i) the trademark dilution claims; (ii) the measure of Jackson's damages, which the

Court during the Initial Conference in this action termed the "lost opportunity cost" of what

Jackson could have negotiated for providing his endorsement of a major fast-food chain; and (iii)

the assessment of enhanced/ or exemplary damages.  Accordingly, this Court should grant

Jackson partial summary judgment.

## <u>ARGUMENT</u>

A motion for summary judgment must be granted if, based on the pleadings and

submitted affidavits, it appears that "there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  When, as here, the

movant has the burden of proof, then if its submissions make out a <u>prima facie</u> case for judgment

in its favor, the burden shifts to the nonmoving party to show that a genuine issue exists.  Celotex

Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986).

Analyzed within this framework, it is clear that partial summary judgment for Jackson

with respect to Taco Bell's liability on the First, Second, and Third Causes of Action is

mandated.  Indeed, partial summary judgment with respect to the defendant's liability is routine

with respect to the causes of action addressed by this Motion.  See, e.g., Negri v. Schering Corp.,

333 F. Supp. 101 (1971); Morse v. Studin, 283 A.D.2d 622, 622, 725 N.Y.S.2d 93 (2d Dep't

2001) (granting summary judgment to plaintiff as to liability under Section 51 where physician's

"newsletter" contained gift certificates and descriptions of positive patient outcomes); Allen v.

Men's World Outlet, Inc., 679 F. Supp. 360 (S.D.N.Y. 1988) (summary judgment for false

endorsement under Lanham Act Section 43(a)).

**POINT I**

**Jackson Is Entitled to Summary Judgment That Taco Bell Is Liable**
**Under Section 51 of New York Civil Rights Law Because**
**Taco Bell Violated Jackson's Right of Publicity As A Matter Of Law**

The State of New York recognizes that "a celebrity has a legitimate proprietary interest in

his public personality.  He must be considered as having invested years of practice and

competition in a public personality which eventually may reach marketable status.  That identity

is a fruit of his labors and a type of property." Rosemont Enters. v. Urban Sys., Inc., 72 Misc. 2d

788, 790, 340 N.Y.S.2d 144 (Sup. Ct. N.Y. Co. 1973).  For more than a century, New York has

protected that valuable property interest—known as the "right of publicity"—from trespass

through Section 51 of the Civil Rights Law, which provides in pertinent part:

> Any person whose name, portrait, picture or voice is used within
> this state for advertising purposes or for the purposes of trade
> without the written consent first obtained as above provided may
> maintain an equitable action in the supreme court of this state

- 4 -

> against the person, firm or corporation so using his name, portrait,
> picture or voice, to prevent and restrain the use thereof; and may
> also sue and recover damages for any injuries sustained by reason
> of such use . . . .

The elements of that statute are "(1) use of plaintiff's name . . . (2) "for advertising purposes or for the purposes of trade" (3) without consent and (4) within the state of New York." Hoepker v. Kruger, 200 F. Supp. 2d 340 (S.D.N.Y. 2002). Taco Bell's use of Jackson's name in a communication which disseminated Taco Bell's "messaging" related to WPM violated Jackson's right of publicity as a matter of law. Accordingly, partial summary judgment is appropriate.

### 1.   The "Letter" Used Jackson's Given Name and Professional Name.

The "letter" is addressed to "Mr. Curtis Jackson aka 50 Cent" and begins by stating "We know that you adopted the name 50 Cent years ago as a metaphor for change." Thus, there is no issue with respect to Taco Bell's use of Jackson's name and professional name.

### 2.   The Use of Jackson's Name Occurred in New York State.

C&W disseminated the letter to New York media outlets, including OK! Magazine on Fifth Avenue in Manhattan. Moreover, the press coverage about the "letter" was disseminated worldwide (including New York) on the Internet, just as C&W and Taco Bell intended.

### 3.   Taco Bell Did Not Have Jackson's Written Consent to Use His Name in the "Letter"

Taco Bell does not, and cannot, contend that it sought or received Jackson's permission to use his given name, professional name, or trademark in the "letter."

### 4.   Taco Bell's So-Called "Letter" Constitutes a Use of Jackson's Name For Advertising Purposes.

Section 51's "advertising purposes" prong is "liberally construed" by New York Courts. Beverly v. Choices Women's Medical Center, Inc., 78 N.Y.2d 745, 750, 587 N.E.2d 275 (N.Y.

-5-

1991).  "A name . . . is used 'for advertising purposes' if it appears in a publication which, taken

in its entirety, was distributed for use in, or as part of, an advertisement or solicitation for

patronage of a particular product or service." Id. at 751 (internal citations omitted).

     Section 51 seeks to remediate "the unauthorized use of a name or picture to sell a

*collateral* commodity.  That . . . was what the statute was primarily intended to cover."

Koussevitzky v. Allen, Towne & Heath Inc., 188 Misc. 479, 68 N.Y.S.2d 779 (Sup. Ct. N.Y. Co.

1947) (emphasis added).  Such "collateral" use is exactly what Taco Bell did with its letter: use

"50 Cent" to attract consumer attention to Taco Bell's Why Pay More! Value Menu, and thereby

solicit patronage for it.  C&W's Eric Kwan explained the concept cogently when he

acknowledged that ██████████████████████████████████████████

██████████████████████████████████████████████████

     This Court's opinion in Negri v. Schering Corp., 333 F. Supp. 101 (S.D.N.Y. 1971), is

dispositive of this motion.  The facts of Negri bear an uncanny resemblance to the instant case.

This Court granted famous actress Pola Negri partial summary judgment that Schering Corp. was

liable under Section 51 for using an advertisement comprised of her image alongside the words

"POLARAMINE REPETABS 6 MG;" the tagline "Allergy control with infrequent antihistamine

daze;" and what the Court called "a promotional screed of several paragraphs extolling the

alleged superior virtues of Schering Polaramine Repetab tablets over competing products." Id. at

103.

     Schering denied that the play on words—using a celebrity named "*Pola*" in an

advertisement for its "*Pola*ramine" product—was intentional.  See Id.  This Court pointed out

that "even if this claim were believable, the fact remains that the Pola-Polaramine combination

was obviously of advantage to the defendant's sales efforts." Id. at 106.  Notably, Schering's

advertising agency claimed that the use of Negri's image was an effort to employ "eye-catching humor." See Id. at 105. When Schering's argued that the use of Pola Negri's image in this manner was not an "advertising use," this Court termed that argument

> so patently without merit as to require little discussion.   It is plain
> as a pike staff that the picture is not only used to catch the eye and
> to focus it on the advertisement, but that Miss Negri is depicted as
> actually recommending the Schering product.  This is a blatant use
> of a picture for purely advertising purposes.

Id. This Court found that the entire use by "Schering and its ad agency was in callous disregard of plaintiff's rights under the statute" and held Schering liable as a matter of law. Id. at 106.

This case is more egregious because, unlike Schering, Taco Bell has *admitted* that it intended to invoke a "play on words" between "50 Cent" and its "79/89/99 Cent Why Pay More! Value Menu." (Ex. 26 to Raymond Decl., ¶ 5)  In every other respect, the cases are indistinguishable. Both used a celebrity to "catch the eye and to focus it on the advertisement" which "extoll[ed] the alleged superior virtues of" their products.  (Ex. 26 to Raymond Decl.)  As in Negri, partial summary judgment is in order.

New York state court cases also compel summary judgment for Jackson.  For example, in Beverly v. Choices Women's Medical Center, Inc., 78 N.Y.2d 745, 750, 587 N.E. 275 (N.Y. 1991), the Court of Appeals affirmed partial summary judgment as to liability arising from the unauthorized use of plaintiff's photograph in a calendar distributed by a family-planning clinic. The Court of Appeals called the calendar "quintessential advertising material . . . plainly designed to preserve existing patronage and to educate and solicit new clients." Id. at 751.  This conclusion was based upon "[t]he pervasive and prominent placement of Choices' name, logo, address and telephone number [on each page] . . . the wide scope of distribution . . . the range and nature of the targeted audiences, the glowing characterizations and endorsements concerning

- 7 -

the services Choices provides . . .[and] [l]audatory references about Choices' for-profit medical

services business." Id.; see also Selsman v. Universal Photo Books, Inc., 18 A.D.2d 151, 152-53

(1st Dep't 1963) (granting partial summary judgment to famous child actress as to liability of

Minox camera manufacturer for using her photograph in its "Minox Manual"; although Manual

was not a classic form of advertisement, "it does advertise the Minox camera" and "educate[s]

the public as to the advantages and virtues of commodities and thereby stimulate demand

therefor").

    Beverly and Selsman each involved fact patterns *less* compelling than the case at hand.

The Taco Bell "letter" contains more indicia of an advertisement than either Beverly of Selsman:

- In addition to displaying Taco Bell's contact information ("one of our more than 5,600 locations nationwide"), it also directs users to Taco Bell's website online ("www.tacobell.com/valuemenu"). C&W's Novickas testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- Taco Bell implemented a wide scope of distribution, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- The "letter" was calculated to attract the attention of a target audience (hip-hop music fans) that overlays onto Taco Bell's target ▮▮▮ year old target demographic. UF 1, 6.

- The "letter" contains "glowing characterizations" and "laudatory references" about Taco Bell's products (e.g., "for just a few spare coins, we're giving customers more variety for less money;" "our new 79-89-99 Why Pay More Value Menu;" "a Cheesy Double Beef Burrito for only $.89").

    The testimony of C&W and Taco Bell employees and officers reveals that Taco Bell

intended to advertise via the letter.  When asked, "What were the purposes of Cohn & Wolfe that

you had in mind in issuing this letter?," C&W's Novickas began, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████

In view of these admissions, a reasonable finder of fact should conclude that Taco Bell

used Jackson's name to advertise, and solicit patronage for, the Why Pay More! Value Menu. [2]

### 5.    Taco Bell's Affirmative Defenses Fail As A Matter of Law.

Taco Bell's Third and Fourth Affirmative Defenses, respectively, assert that the First

Amendment and the exception to Section 51 related to matters that are "newsworthy and/or a

matter of public interest" absolve it of liability.  That is wrong on the facts and wrong as a matter

of law.  The "letter" is not a "report" on a "newsworthy" matter, nor a matter of "public interest."

It is an advertisement, and imposing liability for it will not run afoul of the First Amendment.[3]

Indeed, "[t]he advertising and trade limitation . . . was *crafted with the First Amendment*

*in mind*. . . . [T]he New York legislature sought to protect a person's right to be free while at the

same time protecting the quintessential American right to freedom of expression." Hoepker v.

---

[2]    In the event that the Court finds that Taco Bell's use of Jackson's name was not for an "advertising purpose," it is inarguably a use "for the purpose of trade," which "include[s] . . . those not really pertaining to matters of public interest," an "interpretation [that] gives redress to the victims of some of the more devastating, but often subtle, techniques of commercial exploitation of a person's identity." Davis v. High Soc'y Magazine, Inc., 90 A.D.2d 374, 381, 457 N.Y.S.2d 308 (2d Dep't 1982).

[3]    Notably, the applicability of the "public interest" or "newsworthiness" exception *must* be determined as a matter of law based solely upon the content of the "letter," and does not depend at all on Taco Bell's subjective state of mind or opinion about the "newsworthiness" of the "letter." See Freihofer v. Hearst Corp., 65 N.Y.2d 135, 480 N.E.2d 349 (N.Y. 1985) (reversing lower courts' denial of summary judgment to await evidence of defendant's primary purpose: "the critical factor . . . is the content of the published article in terms of whether it is newsworthy, which is a *question of law*, and not the defendant's motive.") (emphasis added).

Kruger, 200 F. Supp. 2d 340, 348 (S.D.N.Y. 2002) (emphasis added).  Although "free speech rights clearly transcend privacy rights when the speech concerns "newsworthy events or matters of public interest," id. at 349, Taco Bell cannot meet any of the pre-requisites of that exception.

First, and most obviously, Taco Bell is not a media enterprise, and the "newsworthiness" exception, which has always been limited to media institutions—i.e., publishers, studios, and others whose profit models require sale of the medium used to convey the information.  See, e.g., Sidis v. F-R Pub. Co., 113 F.2d 806 (2d Cir. 1940) ("'for the purposes of trade' does not contemplate the publication of a *newspaper, magazine, or book*") (emphasis added); Friedan v. Friedan, 414 F. Supp. 77, 78 (S.D.N.Y. 1976) (same);  Davis, 90 A.D.2d at 379 (same);  Reilly v. Rapperswill Corp, 50 A.D.2d 342, 344 (1st Dep't 1975) ("no issue is presented involving a genuine news medium").

Taco Bell is a $6 billion fast food chain, not a media enterprise.  That bright-line distinction bars it from invoking the "newsworthiness" or "public interest" shield to liability, as the New York Court of Appeals confirmed in Beverly:

> This newsworthiness/public interest exception evolved out, and has been applied in, a series of cases in which *media defendants* used plaintiffs' photos in connection with periodical or newspaper articles or documentary films concerning newsworthy events or subjects of public interest, including political events, social trends, scientific news, and stories of consumer interest.  *Choices, however, is not a media enterprise; its calendar was an advertisement of its only business*-providing medical services; and it used Dr. Beverly's photo, name and professional title not as part of a disguised advertisement for that business, but in a direct and promotional, commercial manner.  It included the statutorily offending photo and descriptive information in a publication which, *on its face*, was an advertisement.

78 N.Y.2d at 752 (final emphasis in original).  Taco Bell, like the medical clinic in Beverly, cannot invoke the "newsworthiness" exception.

Secondly, even if Taco Bell were a "media enterprise" (and it is not), Taco Bell's claim

that the self-serving "celebrity challenge" in the "letter" constitutes a matter of public interest is

fallacious. (Ex. 9 to Raymond Decl. at ¶ 8). The concept of "public interest" does not immunize

any self-promotion that invokes a celebrity. To countenance such a result would eviscerate the

right of publicity as advertisers lined up to concoct stunt upon stunt. The types of "public

interests" which the courts have accepted as legitimate plainly do not include Taco Bell's self-

serving advertisement. See, e.g., Finger v. Omni Publ'n Int'l Ltd., 566 N.E.2d 141 (N.Y. 1990)

(fertility); Heller v. Family Circle, Inc., 85 A.D.2d 679, 445 N.Y.S.2d 679 (2d Dep't 1981)

(prenatal gender selection). Indeed, even the presence of a *legitimate* public interest does not

immunize an obvious advertisement from liability. The Court of Appeals in Beverly deemed

women's rights "surely [a] matter[] of important public interest," but held that "a commercial

advertiser such as Choices may not unilaterally neutralize or override the long-standing and

significant statutory privacy protection by wrapping its advertising message in a cloak of public

interest." 78 N.Y.2d at 752-753. The medical clinic thus could not "seek cover under the public

figure/public event exception." Id. at 753.

Similarly, in Rinaldi v. Village Voice, 79 Misc.2d 57, 359 N.Y.S.2d 176 (Sup. Ct N.Y.

Co. 1974), the court rejected as a matter of law the claim that a Village Voice caricature of a

judge was defensible as "public interest," "good faith," and "constitutionally privileged," when

printed alongside laudatory statements about the Village Voice and subscription coupons. The

court ruled that the publication

> is clearly intended to solicit continuing readership of The Village
> Voice newspaper. This solicitation is confirmed by the inclusion of
> coupons in the advertisement stating "a year's subscription (52 is-
> sues) to the Village Voice, I enclose $7." The coupons show a
> domestic subscription rate of $12 for two years, $16 for three years
> and $8 for a foreign subscription. *The addition of a protest*

> *message to the subscription coupons criticizing the performance of*
> *the plaintiff in his official duties does not serve to purify the*
> *publication but takes the disguised form of an effort to evade the*
> *law and thereby infects its constitutional protection.*

Id. at 59-60 (emphasis added). On the whole, the court found that "[t]he commercial message

taints the publication as a disguised effort to evade the law." Id. (emphasis added).

That passage from Rinaldi faithfully complies with the United States Supreme Court's

view of advertising that is mixed with commentary on public issues:

> Advertising which 'links a product to a current public debate' is
> not thereby entitled to constitutional protection afforded by
> noncommercial speech. A company has full the panoply of
> protections available to its direct comments on public issues, so
> there is no reason for providing similar constitutional protection
> where such statements are made in the context of commercial
> transactions.

Bolger v. Young Drugs Products Corp., 463 U.S. 60, 67-68, 103 S. Ct. 2875, 2880-81, 77 L. Ed.

2d 469 (1983) (deeming condom manufacturer's pamphlets, which discussed the patently

important topic of venereal disease, to be advertisements for condoms).

Bolger and Rinaldi conclusively dispose of any argument that holding Taco Bell liable

runs afoul of the First Amendment. Under the common-sense test applied to such cases, it is

plain that Taco Bell's self-serving "challenge" to Jackson is a pretext to obtain free advertising.

Third, the fact that Jackson is famous does not alter this analysis at all. This Court has

rejected the theory that the famous can be commercialized without consent. In Ali v. Playgirl,

Inc., 447 F. Supp. 723 (S.D.N.Y. 1978), this Court ruled, as a matter of law, that "there is no . . .

informational or newsworthy dimension to defendants' unauthorized use of [boxing great

Muhammad] Ali's likeness" in publishing a nude portrait of him. Id. at 727. The court ruled as a

matter of law that "the nude portrait was clearly included in the magazine solely for purposes of trade e. g., merely to attract attention." Id. (internal quotes and citations omitted).

The Court added that Playgirl was "plainly in error" in arguing that Section 51 does not apply to persons like Muhammad Ali, who "chooses to bring himself to public notice" and "chooses to rather stridently seek out publicity." Ali, 447 F. Supp. at 727.  That argument "confuses the fact that projection into the public arena may make for newsworthiness of one's activities, and all the hazards of publicity thus entailed, with *the quite different and independent right to have one's personality, even if newsworthy, free from commercial exploitation at the hands of another*." Id. (emphasis added).

New York state courts echo that result.  In Rosemont Enters. Inc. v. Urban Sys. Inc., 72 Misc. 2d 788, 340 N.Y.S.2d 144 (Sup. Ct. N.Y. Co. 1973), the defendant sold a board game called "The Howard Hughes Game."  The Court granted Hughes summary judgment under Section 51 and rejected the claim that "public interest" in Hughes' life immunized the defendant:

> In reality, defendants are not disseminating news.  They are not educating the public . . . . They are selling a commodity . . . .  The use of plaintiff's name, biographical data, etc. in this context is not legitimate to the public interest.  It is merely the medium used to market a commodity familiar to us all in its varied types and forms. Use for such purposes is an act of appropriation of those property rights belonging to plaintiff, Hughes.

Id. at 790; see also Brinkley v. Casablancas, 80 A.D.2d at 433-34, 438 N.Y.S.2d 1004 (1st Dep't 1981) (granting supermodel Brinkley summary judgment as to liability for sale of posters made from photographs taken at a public event).[4]

---

[4]     Taco Bell has frequently claimed that the "letter" was a "good faith offer," a distinction which Taco Bell appears to believe would insulate it from liability.  However, the

Continued on following page

- 13 -

Notably, "humor" and "fun" are not public interests. Taco Bell has made frequent reference to the purportedly "humorous" aspects of the "letter." Answer ¶¶ 5, 6. That argument has been rejected on near-identical facts. *Eagles* guitarist Don Henley won summary judgment on liability based upon an ad depicting a model in a "henley"-style shirt, captioned "This is Don. This is Don's henley." Henley v. Dillard's Department Stores, 46 F. Supp 2d 587 (N.D. Tex. 1999). Like Taco Bell, the advertiser did not deny the play on words with Henley's name. Instead, it claimed that the use of Henley's name was for "fun." Id. at 594. But, as here, the ad's creator testified that she used Don Henley's name (i) to "catch the consumers' eye," id. at 593; and (ii) "to make the ad more interesting." Id. at 592. The District Court found it "unreasonable" to believe that Henley's name was used for "fun" when the creator of the ad admitted it was used to attract consumer attention. Id. at 593-94.

Jackson has elicited undisputed facts which prove that Taco Bell's "letter" was an unauthorized use of his name for advertising purposes. He is therefore entitled to summary judgment as to Taco Bell's liability for violating his right of publicity.

---

Continued from previous page

intention of the user—whether for good or for ill—is irrelevant to the user's liability under Section 51 (although it is relevant with respect to exemplary damages). The Second Circuit long ago observed that "[p]ersonal ill-will is not an ingredient of the offence, any more than in an ordinary case of trespass to person or property." Sidis v. F-R. Pub. Co., 113 F.2d 806, 810 (2d Cir. 1940) (deeming allegation of 'actual malice' irrelevant because "[i]f plaintiff's right of privacy was not invaded by the article, the existence of actual malice in its publication would not change that result").

## POINT II

### Taco Bell Is Liable To Jackson For Its
### False Designation of Endorsement Under Section 43(a)

Jackson seeks summary judgment as to Taco Bell's liability under the trademark laws of

the Lanham Act, which "are designed not only to prevent consumer confusion but also to protect

'the synonymous right of a trademark owner to control his product's reputation.'" Dallas

Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd., 604 F.2d 200, 205 (2d Cir. 1979)

(internal quotes and citations omitted). Section 43(a)(1)(A) of the Lanham Act (hereinafter

"Section 43(a)") protects both registered and unregistered marks and provides in pertinent part

that

> Any person who, on or in connection with any goods or services ...
> uses in commerce any word, term, name, symbol, or device, or any
> combination thereof, or any false designation of origin, false or
> misleading description of fact, or false or misleading
> representation of fact, which . . . is likely to . . . deceive . . . as to
> the origin, sponsorship, or approval of his or her goods, services,
> or commercial activities by another person . . . shall be liable in a
> civil action by any person who believes that he or she is or is likely
> to be damaged by the act.

Celebrities are protected by Section 43(a) to the same extent as non-celebrity mark holders. A

celebrity "has a similar commercial investment in the 'drawing power' of his or her name and

face in endorsing products and in marketing a career. The celebrity's investment depends on the

good will of the public, and infringement of the celebrity's rights also implicates the public's

interest in being free from deception . . . ." Allen v. Nat'l Home Video, Inc., 610 F. Supp. 612,

625-26 (S.D.N.Y. 1988).

This Court has observed that major celebrities are particularly vulnerable to misleading

uses because *any* use of their names are likely to cause consumers to assume an endorsement has

been given. See id. In Nat'l Home Video, Inc., 610 F.Supp. at 627, this Court granted Woody

Allen summary judgment under Section 43(a) when defendant used a look-alike in its advertisement. This Court rejected the argument that there was no "false" designation of endorsement because the ad did not expressly say that "Allen" endorsed defendant's stores: "When a public figure of Woody Allen's stature appears in an advertisement, *his mere presence is inescapably to be interpreted as an endorsement.*" Id. at 627 n.8 (emphasis added).

In June 2008, Jackson was at least a "figure of Woody Allen's stature," and Taco Bell, without authorization, juxtaposed his name with its Why Pay More! messaging in a nationally-distributed communication. That satisfies all three elements of a Section 43(a) claim of false designation of the sponsorship or approval: (i) goods or services were involved, (ii) there was an effect on interstate commerce, and (iii) there was either a false designation of origin or a false description of the goods or services. See id. at 625.

There is no doubt that the first two elements are met: the "letter" concerned Taco Bell, whose goods and services are available in more than 6,000 stores throughout the United States, many of which are operated by franchisees which are administered from Taco Bell's California headquarters. UF 6. Furthermore, the "letter" was disseminated nationally. UF 48. See Nat'l Home Video, Inc., 610 F. Supp. at 627 n.9 (advertisement which was distributed nationally to solicit customers for a nationwide business "clearly . . . established" first two factors).

The third element—false designation of sponsorship or endorsement—is also met by the "letter." It is "black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source." Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 875 (2d Cir. 1986). This Court determines likelihood of confusion as a matter of law

by examining the factors set forth in <u>Polaroid Corp. v. Polarad Elecs. Corp.</u>, 287 F.2d 492, 495 (2d Cir. 1960).  Those factors (addressed below) are not exclusive, and no one element is dispositive.

**(1) The strength of the plaintiff's mark.**  50 Cent is one of the most famous names on Earth.  In September 2007, an ███████████—a metric form of popularity rating used in show business industry—indicated that ████ of persons aged 18 to 34 knew the name "50 Cent." UF 1.   The words "50 Cent" are a strong mark.  <u>Cf</u>. <u>Ryan v. Volpone Stamp Co., Inc.</u>, 107 F. Supp. 2d 369, 400 (S.D.N.Y. 2000) (holding retired pitcher Nolan Ryan's name to be a "strong" mark.)

**(2) The degree of similarity between the two marks.**  This factor weighs entirely in Jackson's favor because the marks at issue are identical: Taco Bell used Jackson's stage name (and federally registered word mark) "50 Cent" in the "letter."  Ex. 26 to Raymond Decl.

**(3) The proximity of the products.**  Where the parties are not in actual competition, this Court has looked to the fact that the defendant aimed its advertisement at "the same audience to which Plaintiff's own commercial efforts are directed" as a factor.  <u>Nat'l Home Video, Inc.</u>, 610 F. Supp. at 628.  Jackson's young audience is identical with Taco Bell's target ██████████ demographic.  UF 1, 6.

**(4) Bridging the Gap.**  Again, where the parties are not true competitors, this <u>Polaroid</u> factor is of less utility.  ███████████████████████

███████████████████████████████████████

**(5) Evidence of actual confusion.**  This factor weighs entirely in Jackson's favor.  Not only is Jackson the magnitude of star whose presence alone connotes an endorsement, Nat'l Home Video, Inc., 610 F. Supp. at 627 n.8, but Jackson has also introduced substantial evidence that consumers believed that Jackson endorsed Taco Bell.  News stories ███████████ bore the headline "50 CENT TO CHANGE HIS NAME TO 79 CENT FOR TACO BELL."  UF 57. The Internet users from mediatakeout.com quoted above demonstrated a belief that Jackson endorsed Taco Bell.  UF 57, Raymond Decl. Ex. 45.

This Court has found actual confusion based upon far less evidence.  For example, in Nat'l Baseball Hall of Fame and Museum, Inc. v. All Sports Promotions Group., Inc., No. 99-CIV-3635 (KMW) 2001 WL 196755, *8 (S.D.N.Y. Feb. 20, 2001), this Court found actual confusion based upon, *inter alia*, "[n]ewspaper and internet articles conflat[ing] the two entities;" testimony that local business groups had received calls from confused individuals; and "little league" websites that mixed up the two entities' names.  Id.; see also, Lyons P'ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789 (4th Cir. 2000) (vacating lower court finding of absence of likelihood of confusion because lower court had ignored "evidence of actual confusion," including (i) testimony from school principal that appearance of infringing purple dinosaur at rally caused children to yell "Barney!" *en masse;*(ii) newspaper clippings that evidenced actual confusion among children; and (iii) and media reports that misidentified the dinosaur as "Barney").  The anecdotal evidence of actual confusion set forth above is at least as compelling as the evidence in either Nat'l Baseball Hall of Fame or Lyons Partnership.

**(6) Defendant's good faith (or lack thereof) in adopting the mark.**  Again, this factor overwhelmingly favors Jackson.  The bad faith inquiry is simply whether the defendant had "the intention of capitalizing on [the] plaintiff's reputation and goodwill." Cadbury Bev., Inc. v. Cott

- 18 -

Corp., 73 F.3d 474, 482-483 (2d Cir. 1996) (quotation omitted).   Taco Bell has admitted, and the

evidence proves, that Taco Bell intended to capitalize on Jackson's fame.  Consider:



Such conduct cannot be characterized as anything but intentionally trading on Jackson's name.

In granting summary judgment in National Video, this Court aptly observed that:

> While plaintiff has not established that defendants acted
> intentionally to fool people into thinking that plaintiff actually
> appeared in the advertisement, *defendants admit that they designed*
> *the advertisement intentionally to evoke an association with*
> *plaintiff*. They must therefore at least have been aware of the risk
> of consumer confusion, which militates against a finding that their
> motives were completely innocent. Defendants may not have
> intended to imply that plaintiff *actually endorsed* their product, but
> *they happily risked creating that impression in an attempt to gain*
> *commercial advantage through reference to plaintiff's public*
> *image*.

610 F. Supp. at 628 (emphasis added).

**(7) Quality of the Defendant's Product.** The label of this factor can be misleading, because "the actual quality of [defendants'] goods is irrelevant; it is the control of quality that [plaintiff] is entitled to maintain" that matters.  El Greco Leather Prods. Co. v. Shoe World, Inc., 806 F.2d 392, 395 (2d Cir. 1986).  Jackson has no control over the quality of Taco Bell's goods, which imperils the value of his marks as long as consumers associate the marks with Taco Bell.

**(8) The sophistication of the consumers.**  A market of unsophisticated consumers "aggravate[s] the likelihood of confusion." Hasbro v. Lanard Toys, Ltd., 858 F.2d 70, 78 (2d Cir. 1988).  It is no slight to Taco Bell's target demographic of ███ year olds to say that they are not the most sophisticated consumers in the market.

The application of the Polaroid factors to the uncontested facts compels the conclusion that there is a likelihood of confusion.  Several Polaroid factors weigh in Jackson's favor. *Not one* weighs in Taco Bell's favor.  The Court should therefore grant summary judgment against Taco Bell with respect to liability under Section 43(a)[5].

---

[5] Also, a permanent injunction under Section 43(a) requires only proof of "(1) actual success on the merits and (2) irreparable harm." Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc., 170 F.R.D. 361, 385 (S.D.N.Y. 1997).  As a practical matter, an injunction is automatic if success on the merits of the damages claim is proven, because success on the merits requires proof of likelihood of confusion, and "irreparable harm is established by a showing of likelihood of confusion." Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 142 (2d Cir. 1997) (internal quotes omitted).  Thus, Jackson's entitlement to the permanent injunctions he seeks is clear now and need not await trial.

## POINT III

### Taco Bell Is Liable for Infringement Under Section 32 of the Lanham Act

Jackson is also entitled to partial summary judgment under Section 32.  To hold Taco

Bell liable for infringing his registered trademarks, Jackson must prove

> (1) that he has a valid mark that is entitled to protection under the
> Lanham Act; (2) that Taco Bell used the mark, (3) in commerce,
> (4) in connection with the sale or advertising of goods or services
> (5) without his consent, and (6) that through that use, Taco Bell
> created a likelihood of confusion as to the affiliation, connection,
> or association of [defendant] with [plaintiff], or as to the origin,
> sponsorship, or approval of [the defendant's] goods, services, or
> commercial activities by [plaintiff]."

Gruner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072, 1075 (2d Cir. 1993).

When a mark is registered, the analysis under Section 32 is identical to the analysis under

Section 43(a), which "is a broader provision which protects unregistered trademarks similar to

the way that section 32(1) ... protects registered marks." Gucci Am., Inc. v. Duty Free Apparel,

Ltd., 286 F. Supp. 2d 284, 287 n.2 (S.D.N.Y. 2003) (internal quotes omitted).  Thus, because the

registered word mark 50 CENT is also the mark addressed by the Section 43(a) analysis above,

the analyses of each of those points are incorporated here by reference.[6]

### 1.   Taco Bell's Defense of Fair Use Fails as a Matter of Law.

Taco Bell's Second Affirmative Defense is "fair use," which that doctrine is inapplicable

as a matter of law.  The defense of fair use provides that a defendant may use a trademark in its

primary, descriptive sense—as opposed to its secondary-meaning sense, imbued with the source-

---

[6]   The only additional item of evidence required is proof of registration, but it is not
contested that the 50 CENT Marks are all registered.  Jackson annexed as Exhibit  A to
his Complaint true and correct copies of the Certificates of Registration of the 50 CENT
Marks with the U.S. Patent & Trademark Office, and Taco Bell has not challenged the
validity of those registrations.

identification function that is protected by trademark law—to accurately describe its own goods. The Court must analyze whether Taco Bell's use of the word mark 50 CENT was "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." EMI Catalogue P'ship. v. Hill, Holliday, Connors, Cosmopulos Inc., 228 F.3d 56, 64 (2d Cir. 2000).

Taco Bell's cannot satisfy any of those elements.  First, Taco Bell has admitted ████ ███████████████████████████ i.e., "as a symbol to attract public attention." See Safeway Stores, Inc. v. Safeway Props., Inc., 307 F.2d 495, 499 (2d Cir. 1962).  That alone defeats its claim of "fair use."

Second, any use of the words "50 Cent" would not have been a descriptive use, because Taco Bell does not claim to sell the items advertised in the "letter" for only 50 cent[s].  UF 28. An analogous case arose in Brother Records, Inc. v. Jardine, 318 F.3d 900 (9th Cir. 2004), in which the holder of the word mark THE BEACH BOYS received summary judgment against a former group member who advertised his band as, inter alia, "The Beach Boys 'Family & Friends.'"  The Ninth Circuit affirmed, despite Jardine's affirmative defense of fair use.  "Jardine does not use 'The Beach Boys' trademark to denote its primary, descriptive meaning of 'boys who frequent a stretch of sand by the sea.'  Instead, Jardine uses [the mark] in its secondary, trademark sense, which denotes the music band."  In the same manner, Taco Bell used the trademark "50 Cent" in its secondary, trademark sense: to denote the hip-hop superstar (and thus attract attention).  That is not fair use.  It is trademark infringement.

Finally, Taco Bell did not use the 50 CENT Mark in good faith. The discussion of the sixth Polaroid factor in Point II, supra is incorporated by reference.  See EMI Catalogue P'ship, 228 F.3d at 66 ("precedents discussing good faith as the sixth Polaroid factor ... are relevant because the focus of the inquiry is the same").

- 22 -

## POINT IV

### Jackson Is Entitled To Summary Judgment that
### Taco Bell Is Liable for Monetary Damages Under the Lanham Act

Jackson seeks summary judgment not only with respect to liability (and therefore injunctive relief), but also with respect to his right to recover monetary damages at trial.

A party seeking monetary damages under the Lanham Act must demonstrate *actual* confusion (as opposed to a *likelihood* of confusion, as required for equitable relief). PPX Enters. Inc. v. Audiofidelity Enters. Inc., 818 F.2d 266 (2d Cir. 1981). Here, as set forth above, there is clear evidence of actual confusion. Moreover, where, as here, a defendant has acted with deceptive intent and has actively sought to cause confusion, this Court has *presumed* that the actual confusion defendant sought did, in fact, occur.

#### 1. Because Taco Bell's Conduct Has Been So Outrageous and Intentional, Actual Confusion Should Be Presumed

In PPX Enters., the defendant sold albums featuring superstar Jimi Hendrix's name and picture on the cover. Those years-old recordings included a young, unknown Hendrix playing background or not playing at all. The trial court entered an injunction under Section 43(a) but set aside the jury's damages and attorneys' fees award, because plaintiff had not presented evidence of actual confusion. The Second Circuit reversed and held that actual confusion should have been presumed:

> Given the egregious nature of [defendant]'s actions, we see no
> need to require appellant to provide customer surveys or reaction
> tests in order to prove entitlement to damages. The only possible
> conclusion to be derived from [defendant]'s conduct was that
> consumers actually were deceived by the misrepresentations.

Id. at 272; see also Restatement (Third) of Unfair Competition § 36, cmt. i (1995) ("direct proof of actual confusion . . . may consist instead of . . . the nature of the defendant's misconduct.")

- 23 -

Actual confusion should be presumed here: Taco Bell acted with a conscious intent to link its

brand to Jackson, and to reap where it had not sown.

### 2.   Jackson Has Produced Evidence of Actual Confusion As To His Association or Endorsement of Taco Bell

The discussion of actual confusion in Point II, *supra* (the fourth <u>Polaroid</u> factor), which is

incorporated here, satisfies Jackson's burden—if it remains his burden—to prove actual

confusion and thus to recover monetary damages under Section 43(a).

## POINT V

### Taco Bell's Conduct Is So Egregious That The Court Should Grant Summary Judgment That The Case Is "Exceptional" Under 28 U.S.C. § 1117.

Taco Bell's calculated scheme to trade on Jackson's name cries out for censure. If the

Court grants Jackson summary judgment liability with respect to any Lanham Act causes of

action, then the issue of Jackson's entitlement under 28 U.S.C. § 1117(a) to recover his

attorneys' fees incurred to-date[7] on the basis that this is an "exceptional case" will be ripe for

adjudication.[8]  This Court has held that defendants who act "willfully, intentionally and with a

callous and reckless disregard" for the rights of the plaintiff mark owners, or who operate in bad

faith, warrant imposition of attorneys' fees.   <u>Getty Petrol. Corp. v. Bartco Petrol. Corp.</u>,  858

F.2d 103, 113-114 (2d Cir. 1988).

The facts adduced in this motion leave no doubt that Taco Bell acted willfully and

intentionally to associate their brand with Jackson, with conscious disregard for Jackson's

---

7   Jackson reserves right to seek fees on the remainder of the case at its conclusion.

8   "It is the judge, and not the jury, that determines whether a case is exceptional." <u>Yeshiva University v. New England Educ. Institute, Inc.</u>, 631 F. Supp. 146, 147 (S.D.N.Y. 1986).

exclusive right to control his name and trademark.  Indeed, Taco Bell has not attempted to deny what it did here; it simply claims, incredibly, that there was nothing wrong with its conduct. Plainly there was, and the censure of attorneys' fees and costs is warranted.

## CONCLUSION

For the foregoing reasons, the Court should adjudging Taco Bell liable on the First, Second, and Third Causes of Action (and enter injunctions under each of those), dismissing Taco Bell's Second, Third, and Fourth Affirmative Defenses, and awarding Jackson his attorneys' fees and costs, along with such other and further relief as the Court deems just, proper, and equitable.

Dated:   New York, New York
         July 9, 2009

                              **REED SMITH LLP**

                              By: _____

                                  Peter D. Raymond
                                  Wallace Neel
                              599 Lexington Avenue, 22nd Floor
                              New York, New York  10022
                              (212) 521-5400