UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CURTIS JAMES JACKSON III, P/K/A "50 CENT," Plaintiff, -against- TACO BELL CORP., Defendant. | : | No. 08 CV 6545 (NRB/RLE) |

[FILED UNDER SEAL]

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO DEFENDANT'S LIABILITY**

Oral Argument Requested

September 9, 2009

**REED SMITH LLP**
Peter D. Raymond
Wallace Neel
Brian Goldberg
599 Lexington Avenue, 22nd Floor
New York, New York 10022
(212) 521-5400

*Attorneys for Plaintiff*
*Curtis James Jackson p/k/a "50 Cent"*

**Table of Contents**

PRELIMINARY STATEMENT ....1

REPLY POINT I
TACO BELL HAS FAILED TO RAISE AN ISSUE OF FACT CONCERNING THE EXISTENCE OF ACTUAL CONFUSION AND, THEREFORE, JACKSON'S RIGHT TO BOTH A FINDING OF LIABILITY AND MONETARY DAMAGES ....2

REPLY POINT II
EVEN IF THE COURT DOES NOT FIND ACTUAL CONFUSION, JACKSON HAS ESTABLISHED LIABILITY BY PROVING A LIKELIHOOD OF CONFUSION ....5

REPLY POINT III
TACO BELL'S AFFIRMATIVE DEFENSES SHOULD BE DISMISSED ....8

REPLY POINT IV
THE COURT SHOULD SANCTION TACO BELL'S INTENTIONAL VIOLATION OF JACKSON'S RIGHTS BY AWARDING ATTORNEYS FEES ....9

CONCLUSION ....10

## Table of Authorities

### CASES

Allen v. Nat'l Home Video, Inc.,
610 F. Supp. 612 (S.D.N.Y. 1985) ....................2, 7, 8

Cadbury Bev., Inc. v. Cott Corp.,
73 F.3d 474 (2d Cir. 1996) ....................6

Gidatex, S.r.L. v. Campaniello Imports, Ltd.,
82 F. Supp. 2d 136 (S.D.N.Y. 2000) ....................10

Gordon and Breach Science Pub. S.A. v. Am. Inst. of Physics,
166 F.3d 438 (2d Cir. 1999) ....................10

Hoepker v. Kruger,
200 F. Supp. 2d 340 (S.D.N.Y. 2002) ....................9

New Kids on the Block v. News Am. Publ.,
971 F.2d 302 (9th Cir. 1992) .................... 8, 9

PPX Enters. Inc. v. Audiofidelity Enters. Inc.,
818 F.2d 266 (2d Cir. 1981) ....................2, 3, 4

Playboy Enterprises, Inc. v. Chuckleberry Pub., Inc.,
486 F. Supp. 414 (S.D.N.Y. 1980) ....................5

Polaroid Corp. v. Polarad Elecs. Corp.,
287 F.2d 492 (2d Cir. 1960) ....................5, 7

Rearden LLC v. Rearden Commerce, Inc.,
597 F. Supp. 2d 1006 (N.D. Cal. 2009)....................4

Standard & Poor's Corp. v. Commodity Exchange Inc.,
683 F.2d 704 (2d Cir. 1982) ....................7

The Heisman Trophy Trust v. Smack Apparel Co.,
08 CV 915, 2009 U.S. Dist. LEXIS 64523 (S.D.N.Y. Jul. 17, 2009) ....................8

Tri-Star Pictures v. Unger,
14 F. Supp. 2d 339 (S.D.N.Y. 1998) ....................4, 5, 7, 10

Volkswagen AG v. Verdier Microbus & Camper, Inc., No. C. 09-00231 JSW,
2009 U.S. Dist. LEXIS 33708 (S.D.N.Y. April 3, 2009) ....................5

Von Bulow v. Von Bulow,
811 F.2d 136 (2d Cir. 1987) ....................9

Yurman Studio, Inc. v. Castaneda,
591 F. Supp. 2d 471 (S.D.N.Y. 2008) ....................7

**STATUTES**

15 U.S.C. § 1117 ....................10

Plaintiff Curtis James Jackson III, p/k/a "50 Cent", by his attorneys Reed Smith LLP, respectfully submits the following Reply Memorandum of Law in further support of his Motion for Partial Summary Judgment with Respect to Liability (the "Motion") against Defendant Taco Bell Corp ("Taco Bell").[1]

## PRELIMINARY STATEMENT

Jackson's Motion seeks partial summary judgment establishing Taco Bell's liability with respect to Taco Bell's violations of his right of publicity under Section 51 of the New York Civil Rights Law ("Section 51"), false designation of sponsorship, and trademark infringement under the Lanham Act. The Motion also seeks injunctive relief under both state and federal law as well as the dismissal of Taco Bell's Affirmative Defenses concerning the First Amendment, the "newsworthiness" doctrine, and the doctrine of "fair use."

Taco Bell has now conceded liability under Section 51 for using Jackson's stage name and "50 CENT" word mark for "an advertising purpose" or "for purpose of trade". Opp'n at 3. However, Taco Bell still refuses to acknowledge liability for false designation of endorsement or trademark infringement under the Lanham Act and persists in claiming (despite the undisputed facts to the contrary) that its actions have not caused actual confusion or even a likelihood of confusion. The Court should not countenance Taco Bell's ongoing denials, which are nothing more than conclusory contradictions of undisputed facts. Instead, the Court should enter summary judgment that (i) Taco Bell is liable to Jackson under Sections 32 and 43(a) of the

---

1 Citations herein are to Plaintiff's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 (the "UF"); the Declaration of Peter D. Raymond executed July 9, 2009 ("Raymond Decl."); Taco Bell's Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment (the "Opposition"); the Declaration of Jason Gould sworn to August 20, 2009 (the "Gould Decl."); Taco Bell's Response to Plaintiff's Statement of Undisputed Facts (the "TB Facts"); and the Reply Declaration of Peter D. Raymond executed on September 9, 2009 (the "Raymond Reply Decl.").

Lanham Act; (ii) a permanent injunction against Taco Bell is appropriate under federal and state law; (iii) damages should be awarded to Jackson because actual confusion is presumed to have resulted from the intentional "celebrity stunt" performed by Taco Bell, or, if not presumed, has been proven based upon undisputed facts; (iv) at a minimum, Taco Bell is liable to Jackson under the Lanham Act because Taco Bell caused a likelihood of confusion; and (v) Taco Bell's willful misuse of the 50 CENT mark requires an award of attorneys' fees and costs to Jackson.

## REPLY POINT I

## TACO BELL HAS FAILED TO RAISE AN ISSUE OF FACT CONCERNING THE EXISTENCE OF ACTUAL CONFUSION AND, THEREFORE, JACKSON'S RIGHT TO BOTH A FINDING OF LIABILITY AND MONETARY DAMAGES

Taco Bell acknowledges that PPX Enters. Inc. v. Audiofidelity Enters. Inc., 818 F.2d 266 (2d Cir. 1981) permits the Court to *presume* the actual confusion necessary to award money damages where the defendant "intentionally sought to confuse consumers." Opp'n at 23.

Taco Bell claims that while there is evidence of an "intent to use the name 50 Cent in the Offer Letter," there is no evidence of an "intent to create confusion." Opp'n at 16. As discussed on page 7 below, this Court heard and rejected that same argument in Allen v. Nat'l Home Video, Inc., 610 F.Supp. 612 (S.D.N.Y. 1985), and ruled that the distinction is meaningless. Moreover, no reasonable reading of the TB Facts would conclude that Taco Bell did not intend to induce confusion and free-ride on Jackson's fame. For example, Cohn & Wolfe's ("C&W") Novickas testified that [redacted]



Desperate to avoid the grave consequences of those facts, Taco Bell is now scrambling to distance itself from the conduct of C&W, the public relations agent (TB Fact 12) it hired to launch WPM. See, e.g., T

Tellingly, Taco Bell offers no legal theory that would prevent the application of *respondeat superior*. The Court should not countenance such duplicitous behavior and lack of principal-agent accountability, and should presume actual confusion as permitted under PPX.

To counter the PPX presumption, Taco Bell claims that it has provided "proof of the absence or *de minimis* nature of any confusion." Opp'n at 23. However, that is objectively false:

---

2

Taco Bell has not submitted evidence of anything.

However, Taco Bell's burden in response to the PPX presumption is to submit its own proof *non*-confusion, not to criticize Jackson's findings. Thus, Taco Bell has introduced nothing to overcome the PPX presumption of actual confusion.

Finally, even without the PPX presumption, the undisputed facts demonstrate actual confusion. Taco Bell does not deny that several media outlets covered the "offer letter" with stories headlined "50 CENT TO CHANGE HIS NAME TO 79 CENT FOR TACO BELL." UF 57. That headline is objectively false and strong evidence of actual confusion. See Tri-Star Pictures v. Unger, 14 F. Supp. 2d 339, 356 (S.D.N.Y. 1998).[4] Secondly, the authenticated

3

4

comments of Internet users clearly indicate their belief that Jackson endorsed Taco Bell.[5] Finally, [redacted][6] Accordingly, the Court should rule that Jackson is entitled to monetary damages under the Lanham Act.

**REPLY POINT II**

**EVEN IF THE COURT DOES NOT FIND ACTUAL CONFUSION, JACKSON HAS ESTABLISHED LIABILITY BY PROVING A LIKELIHOOD OF CONFUSION**

Taco Bell's Opposition fails to counter Jackson's showing of a likelihood of confusion under the test set forth in Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1960). Jackson respectfully refers the Court to the analysis of the Polaroid factors in his initial Memorandum of Law, reaffirms that analysis, and notes that the TB Facts have not cast any doubt upon that analysis. However, a few points raised by Taco Bell bear mentioning.

First, with respect to the fourth Polaroid factor (the likelihood that Jackson will bridge the gap to fast food), Taco Bell flatly misrepresents the record by claiming that [redacted]

5 This Court has already determined that the comments of Internet users in "blogs" and "comments" sections of online articles are not only admissible, but persuasive evidence of actual confusion. Volkswagen AG v. Verdier Microbus & Camper, Inc., No. C. 09-00231 JSW, 2009 U.S. Dist. LEXIS 33708, *12 (S.D.N.Y. April 3, 2009) ("several Internet articles and blogs . . . which suggest that consumers believe the Verdier vehicle is a VW product" constitute "[e]vidence of actual confusion"); cf. Playboy Enterprises, Inc. v. Chuckleberry Pub., Inc., 486 F.Supp. 414, 428 n.19 (S.D.N.Y. 1980) (finding evidence of actual confusion in letters to magazine from unknown authors).

6 Tri-Star Pictures v. Unger, 14 F. Supp. 2d 339, 356 (S.D.N.Y. 1998) ("without agonizing over all of the details of the findings of the confusion surveys, and acknowledging that both Defendants' and Plaintiffs' surveys minimized and maximized the confusion results, respectively, this Court concludes that there is some evidence of actual confusion under both parties' surveys.").

[redacted]

Second, Taco Bell has admitted facts which prove its bad faith, the sixth Polaroid factor. Jackson noted that the Second Circuit inquires whether the defendant had "the intention of capitalizing on [the] plaintiff's reputation and goodwill," Cadbury Bev., Inc. v. Cott Corp., 73 F.3d 474, 482-483 (2d Cir. 1996) (quotation omitted). Taco Bell's Opposition ducks that question and instead merely claims (again) that it had no intent to "confuse." Opp'n at 14. Because Taco Bell's intent to capitalize on Jackson's reputation and goodwill to promote its new WPM product is not a disputed fact (e.g., TB Facts 25, 34, 86), its bad faith is also not in dispute.

Taco Bell claims that the "sophistication of the consumers" (the eighth Polaroid factor) should be judged not with respect to Taco Bell's targeted [redacted] year old consumers, but rather as to the particular media members to whom Taco Bell sent the "letter." Opp'n at 17. But even if that were reasonable (and it clearly is not), Taco Bell *did* succeed in duping several media outlets into declaring "50 CENT TO CHANGE NAME TO 79 CENT FOR TACO BELL." That is a damning fact, considering this Court's view that "journalists . . . are arguably more sophisticated . . . than ordinary consumers." See Tri-Star Pictures v. Unger, 14 F. Supp. 2d 339 (S.D.N.Y. 1998) (holding that errors in articles "demonstrate[] . . . actual confusion").

Mindful of the fact that it cannot survive a Polaroid analysis, Taco Bell instead asks the Court to ignore logic and apply the Section 43(a)(1)(B) "false advertising" inquiry. Opp'n at 5. However, subparts 43(a)(1)(A) and 43(a)(1)(B) are distinct and serve different functions. See Yurman Studio, Inc. v. Castaneda, 591 F. Supp. 2d 471, 490 -491 (S.D.N.Y. 2008) ("Section 43(a) . . . provides two bases for liability: (i) false representations *concerning the origin, association, or endorsement* of goods or services through wrongful use of another's distinctive

mark . . .; and (ii) false representations in advertising *concerning the quality* of goods and services") (emphasis added). Tellingly, Taco Bell *cannot cite a single case* in which the "false advertising" standard was used to adjudicate a "false designation" claim. Indeed, Jackson would not even have *standing* to assert a claim against Taco Bell under 43(a)(1)(B). Id. ("To have standing for a [Lanham Act] false advertising claim, the plaintiff must be a competitor of the defendant and allege a competitive injury."). Taco Bell's argument for a "false advertising" analysis is a tacit admission that it cannot withstand a Polaroid analysis.

Unfortunately for Taco Bell, Polaroid (or Standard & Poor's, a six-factor subset of Polaroid[7]) is the proper analysis in a false designation of endorsement case. See Allen v. Nat'l Home Video, Inc., 610 F.Supp. 612, 627 (S.D.N.Y. 1985). Like Taco Bell, the defendant in Nat'l Home Video claimed that it did not intend to cause confusion. Id. The Court rejected that false distinction and awarded Woody Allen summary judgment, ruling that although "[d]efendants may not have intended to imply that plaintiff actually endorsed their product . . . they happily risked creating that impression in an attempt to gain commercial advantage through reference to plaintiff's public image." Id. at 628.[8] Nat'l Home Video is indistinguishable from this case, and the same result should obtain here: summary judgment for the plaintiff.[9]

---

7 Standard & Poor's Corp. v. Commodity Exchange Inc., 683 F.2d 704 (2d Cir. 1982).

8 The Court also rejected the claim that the absence of an express statement of endorsement prevented confusion. "When a public figure of Woody Allen's stature appears in an advertisement, his mere presence is inescapably to be interpreted as an endorsement." Id. at 627 n.8.

9 Taco Bell's assertion that the use of the word "offer" twice in the body of the letter constitutes a sufficient disclaimer of affiliation with Jackson to shield it from liability is wrong as a matter of law. Merely stating that a "disclaimer" existed does not raise an issue of fact sufficient to prevent summary judgment. In The Heisman Trophy Trust v. Smack Apparel Co., 08 CV 9153 (VM), 2009 U.S. Dist. LEXIS 64523 (S.D.N.Y. Jul. 17, 2009), Smack Apparel sold t-shirts which were adorned with variations of the word

Continued on following page

## REPLY POINT III

## TACO BELL'S AFFIRMATIVE DEFENSES SHOULD BE DISMISSED

**Nominative Fair Use.** Taco Bell asserts that its Second Affirmative Defense ("fair use") referred to *nominative* fair use, rather than classic fair use. Opp'n at 18. Either way, the Affirmative Defense fails because Taco Bell used the famous word mark "50 CENT" in the trademark sense; i.e., to identify a particular source and to associate its products with it.

The nominative fair use defense applies to "a class of cases where the use of the trademark does not attempt to capitalize on consumer confusion or to *appropriate the cachet of one product for a different one*." New Kids on the Block v. News Am. Publ., 971 F.2d 302 (9th Cir. 1992) (emphasis added). Here, "appropriating the cachet" of the 50 CENT word mark was the stated reason that Taco Bell used Jackson's name. [redacted] Moreover, to invoke nominative fair use, the user must not use the mark more than is necessary, nor use the mark in a way that suggests sponsorship. New Kids on the Block, 971 F.2d at 308. Here, it was unnecessary for Taco Bell to use the 50 CENT mark in a public communication at all. If Taco Bell intended merely to extend an offer, a private letter would have sufficed. Moreover, Taco

---

Continued from previous page

"Heisman" (such as "HE.IS.the.MAN and "HE15MAN"). This Court applied the *Polaroid* factors and found a likelihood of confusion as a matter of law, and thus granted summary judgment to plaintiff. The Court also disposed of Smack Apparel's argument that the disclaimers it placed on each t-shirt insulated it from liability. "[D]isclaimers have been found to be of limited value in alleviating an otherwise substantial likelihood of confusion, especially where, as here, the disclaimers are not particularly prominent." Id. at *22. Taco Bell's argument that the "letter" was, when read literally, in the form of an "offer" is even less compelling than the argument made by Smack Apparel.

Bell has conceded that it used the 50 CENT word mark to promote WPM, a classic "trademark" use to which the nominative fair use defense does not apply.

**The First Amendment.** Taco Bell conceded liability under Section 51, yet asserts that the First Amendment protects it from Lanham Act liability. The incongruence defies explanation: the First Amendment protects speech from improper federal *or* state regulation. By conceding that it used Jackson's stage name for an advertising or trade purpose under Section 51, Taco Bell has conceded that the "letter" is not protected by the First Amendment. See Hoepker v. Kruger, 200 F. Supp. 2d 340, 348 (S.D.N.Y. 2002) ("[t]he advertising and trade limitation [in Section 51] . . . was crafted with the First Amendment in mind").[10]

## REPLY POINT IV

## THE COURT SHOULD SANCTION TACO BELL'S INTENTIONAL VIOLATION OF JACKSON'S RIGHTS BY AWARDING ATTORNEYS' FEES

Nowhere is Taco Bell's desperation to avoid an award of attorneys' fees more apparent than its claim that "exceptional cases" under 15 U.S.C. § 1117 *only* exist if fraud or bad faith is involved. Opp'n, at 24-25. And indeed, Taco Bell cites several cases in which bad faith *litigation tactics* prompted an award of fees. Gordon and Breach Science Pub. S.A. v. Am. Inst. of Physics, 166 F.3d 438, 439 (2d Cir. 1999) ("present litigation . . . raised enough non-frivolous claims to preclude the awarding of fees"); Gidatex, S.r.L. v. Campaniello Imports, Ltd., 82 F. Supp. 2d 136, 148 (S.D.N.Y. 2000) ("engaging in litigation tactics designed to delay").

10 Taco Bell's claim that it is a "report[er]" for First Amendment purposes, Opp'n at 21, is too clever by half. A journalist, for First Amendment purposes, is one who investigates pre-existing facts with "the intent to disseminate to the public the information obtained through the investigation." Von Bulow v. Von Bulow, 811 F.2d 136, 143 (2d Cir. 1987). Taco Bell concocted an advertisement and disseminated it *through* the press. It is not a member *of* the press, and therefore its publishing activities do not receive First Amendment protection.

However, Taco Bell omits to mention that although bad faith litigation tactics are one possible basis for a finding of "exceptionality," the intentional infringement of a mark holder's rights is a separate, and independently sufficient, basis for a fee award under the Lanham Act. Tri-Star Pict's, Inc. v. Unger, 14 F. Supp. 2d 339, 364 (S.D.N.Y. 1998) ("Defendants' intentional infringement here makes this case ripe for an award of attorney's fees.").

Taco Bell does not even attempt to distinguish the cases cited by Jackson on this point—nor could it. The TB Facts concede that Taco Bell's conscious intent was to utilize the goodwill Jackson has built in the 50 CENT word mark. E.g., TB Facts 25, 34, 86. This willful violation of Jackson's rights renders this case exceptional and should lead the Court to award Jackson his fees and costs under 15 U.S.C. § 1117.

## CONCLUSION

For the foregoing reasons, the Court should enter summary judgment on liability, against Taco Bell on the First, Second, and Third Causes of Action, and injunctions on those counts; dismiss Taco Bell's Second, Third, and Fourth Affirmative Defenses; award Jackson his attorneys' fees and costs; award such other and further relief as the Court deems just, proper, and equitable; and set down a hearing to determine the amount of Jackson's damages and attorneys' fees and costs.

Dated: New York, New York
September 9, 2009

REED SMITH LLP
By: [signature]
Peter D. Raymond
Wallace Neel
Brian Goldberg
599 Lexington Avenue, 22nd Floor
New York, New York 10022
(212) 521-5400